**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Pierre S. TANIOS, Defendant–Appellant.**

**No. 95–20063
Summary Calendar**

United States Court of Appeals,
Fifth Circuit.

April 17, 1996.

Rehearing Denied May 24, 1996.

Katherine L. Haden, U.S. Attorney's Office, Paula Camille Offenhauser, Houston, TX, for U.S.

Chris R. Flood, Dick W. DeGuerin, DeGuerin & Dickson, Houston, TX, for Tanios.

Before POLITZ, Chief Judge, and DAVIS and EMILIO M. GARZA, Circuit Judges.

POLITZ, Chief Judge:

The opinion rendered herein on March 8, 1996 is withdrawn and the following is substituted in its place.

Convicted of conspiracy to evade federal fuel excise taxes,[1] Pierre S. Tanios appeals, urging insufficiency of the evidence; error in the jury charge, both before and during deliberations; and impropriety in the jury's disclosure of its division when communicating its deadlock to the court. Finding no reversible error, we affirm.

*Background*

The indictment arose out of Tanios' business relationship with Lion Boulus, who also was named in the conspiracy count and in the five substantive counts of the indictment. The evidence establishes that Boulus, using the assumed name Adolphe Moussa,[2] formed Moussco Investment, Inc., which operated as a wholesale distributor of diesel fuel, purchasing from a supplier and reselling to retail outlets. During the relevant period herein payment of the excise tax was the responsibility of the wholesale distributors like Moussco, with tax liability attaching

---

1. 18 U.S.C. § 371, 26 U.S.C. § 7201.

2. Boulus managed to secure a Texas Identification Card in the name of Moussa, a childhood friend of himself and Tanios.

upon sale to a retailer.[3] Moussco's tax accountability exceeded $250,000.

The evidence reflects that Tanios, also known as "Pierre Torres," was owner of several of the retail outlets serving as Moussco's customers. He had a long-standing personal and business relationship with Boulus. He often represented Moussco, doing such things as having a supplier make invoices to a convenience store in the name of Moussco, making payments to Moussco's suppliers and creditors for the fuel delivered, and writing checks in Moussco's name.

The jury found Boulus guilty on all counts but, initially, it could not agree on a verdict for Tanios. Contrary to the trial judge's express instructions, in a written communication with the court the jury informed that it had reached an impasse with ten voting to convict and two voting to acquit. The court did not disclose this division to the parties but gave the jury a modified *Allen* charge.[4] Following additional deliberations, the jury found Tanios guilty of the conspiracy charge. The court imposed a sentence of two years imprisonment and a fine of $6000. Tanios timely appealed.

## Analysis

Tanios first contends that as a matter of law the evidence is insufficient to sustain his conviction. He moved for judgment of acquittal at the close of the government's case-in-chief but did not renew the motion at the close of all of the evidence. We accordingly review the record under the miscarriage of justice rubric, examining to see if there is evidence indicative of Tanios' guilt.[5]

To secure a conviction the prosecution had to prove, beyond a reasonable doubt, that Tanios and Boulus agreed to evade federal excise taxes[6] and committed at least one overt act in furtherance of their agreement.[7] Moussco was obligated to pay the excise taxes. Tanios was fully aware that Moussco was a dummy corporation which Boulus set up for the purpose, *inter alia*, of assisting in his tax evasion scheme. We entertain no doubt that Tanios' actions on behalf of Moussco, particularly as they related to the sale and transfer of diesel fuel, provide a sufficient basis to sustain his conviction.

■ Tanios next challenges the court's refusal to give a special instruction regarding two prosecution witnesses who testified that Boulus regularly held himself out as Moussa, testimony which was diametrically opposed to a defense theory that Boulus and the "Moussa" who headed Moussco were different persons. The jury obviously rejected this defense. The two witnesses were creditors of Moussco and both were under state indictment for evasion of state fuel excise taxes. These facts were fully developed on cross-examination. Both denied any promise or expectation of leniency in the pending state court actions as a consequence of their testimony in the instant prosecution. The defense[8] requested an instruction cautioning the jury on its assessment of the testimony of an accomplice or informant. In declining the request, the trial judge stated that there was no evidence of any offer of immunity or leniency and that the traditional instructions on witness credibility were adequate to cover the situation.

Tanios did not object to the court's ruling on the requested instruction and we there-

---

3. The excise tax liability typically attaches to the wholesaler in its transactions; no tax is imposed upon transactions between suppliers and wholesalers.

4. *See United States v. Pace*, 10 F.3d 1106 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2180, 128 L.Ed.2d 899 (1994).

5. *United States v. Singer*, 970 F.2d 1414 (5th Cir.1992).

6. Tax evasion under 26 U.S.C. § 7201 requires proof of a tax deficiency, willfulness, and an affirmative act which constitutes evasion or attempted evasion of the tax. *United States v.*

*Townsend*, 31 F.3d 262 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 773, 130 L.Ed.2d 668 (1995).

7. *United States v. Chesson*, 933 F.2d 298 (5th Cir.), *cert. denied*, 502 U.S. 981, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991).

8. Actually Boulus requested this instruction. Today's disposition makes it unnecessary for us to resolve the issue whether an *in limine* adoption by Tanios of all motions filed by Boulus included adoption of the requested jury charge.

fore review for plain error.[9] Tanios requested that the following instruction be given:

> The testimony of one who provides evidence against a defendant for some personal advantage, gain, or vindication, must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses. You, the jury, must decide whether the witness' testimony has been affected by any of those circumstances, or by the witness' interest in the outcome of the case, or by prejudice against the defendant, or by the benefits that the witness has received or may receive. You should keep in mind that such testimony is always to be received with caution and weighed with great care. You should never convict any defendant upon the unsupported testimony of such a witness unless you believe that testimony beyond a reasonable doubt.

The instruction actually given to the jury informed:

> You are the sole judges of the credibility or 'believability' of each witness and the weight to be given the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses, including the defendants Lion Boulos and Pierre S. Tanios, who testified in this case. You should decide whether you believe what each person had to say and how important the testimony was. In making that decision, I suggest that you ask yourself a few questions: did the person impress you as honest, did the witness have any particular reason not to tell the truth, did the witness have a personal interest in the outcome of the case, did the witness have any relationship with either the government or the defense, did the witness seem to have a good memory, did the witness have the opportunity and ability to understand the questions clearly and answer them directly, did the witness's testimony differ from the testimony of oth-

er witnesses. These are a few of the considerations that will help you determine the accuracy of what each witness said.

We conclude that, in the absence of any evidence that the government witnesses were accomplices or informants, this instruction was a sufficient response to the concerns expressed by Tanios. There was no error in the trial court's denial of the requested instruction.[10]

■ Tanios next contends that reversible error occurred when the jury revealed the particulars of its deadlocked vote in communicating with the trial judge. Our precedents reject this contention.[11] The mere fact that the jury made known its division to the court, without more, is not grounds for a mistrial or a bar to the court giving the *Allen* charge. This assignment of error lacks merit.

■ Finally, Tanios maintains that the trial court omitted crucial language from the pattern *Allen* charge, an omission which, he asserts, worked to his prejudice. The omitted language would have advised the jury:

> If a substantial majority of your number are for a conviction, each dissenting juror ought to consider whether a doubt in his own mind is a reasonable one since it appears to make no effective impression upon the minds of the others. On the other hand, if a majority or even a lesser number of you are for acquittal, the other jurors ought seriously to ask themselves again, and most thoughtfully, whether they do not have a reason to doubt the correctness of a judgment which is not shared by several of their fellow jurors, and whether they should distrust the weight and sufficiency of the evidence which fails to convince several of their follow jurors beyond a reasonable doubt.

9. *United States v. Calverley*, 37 F.3d 160 (5th Cir.) (*en banc*), *cert. denied*, —— U.S. ——, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995).

10. *United States v. Aggarwal*, 17 F.3d 737 (5th Cir.1994); *United States v. D'Antignac*, 628 F.2d 428 (5th Cir.), *cert. denied*, 450 U.S. 967, 101 S.Ct. 1485, 67 L.Ed.2d 617 (1981).

11. *United States v. Nguyen*, 28 F.3d 477 (5th Cir.1994); *Sanders v. United States*, 415 F.2d 621 (5th Cir.), *cert. denied*, 397 U.S. 976, 90 S.Ct. 1096, 25 L.Ed.2d 271 (1970).

Tanios contends that omission of this paragraph from the pattern *Allen* charge [12] amounted to a tacit coercion of the instant jury to return a verdict of guilty.

■ Deviations from the pattern *Allen* instruction must be done with care and prudence. Our review is for prejudice, giving due consideration to the coercive potential in all relevant circumstances surrounding the giving of this special charge.[13]

By the time the *Allen* charge was given the trial judge had been informed, in derogation of his express instructions, that the jury's disposition was ten for conviction and two for acquittal. The first line of the deleted paragraph, which was intended for a jury whose leanings are unknown, emphasizes that a hypothetical minority should reconsider its position when a "substantial majority" is for conviction. At the time the instruction was given, therefore, the deleted paragraph conceivably could have prejudiced Tanios as much or more than it might have helped him. The trial judge voiced a concern and sought to lessen any prejudicial impact from the charge. The prosecutor agreed to the deletion. Considering all relevant circumstances herein, the trial judge's commendable effort to obviate or at least markedly reduce any potential prejudice to Tanios, was not error. The *Allen* charge as given did not amount to coercion of the jury to return a verdict of guilty. This assignment of error fails.

**AFFIRMED.**

---

12. *See Pace* (approving the pattern *Allen* instructions).

13. *United States v. Heath*, 970 F.2d 1397 (5th Cir.), *cert. denied*, 507 U.S. 1004, 113 S.Ct. 1643, 123 L.Ed.2d 265 (1993).