2005 ND 152

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Travis PARISIEN, Defendant and Appellant.**

**Nos. 20040348, 20040349, 20040350.**

Supreme Court of North Dakota.

Aug. 18, 2005.

Mary Kathleen O'Donnell, State's Attorney, Rolla, N.D., for plaintiff and appellee.

Robin L. Olson, Olson Johnston Law Office, Grand Forks, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Travis Parisien appealed from criminal judgments entered on jury verdicts finding him guilty of class A felony gross sexual imposition, class C felony aggravated assault and class C felony felonious restraint. We conclude that, under the totality of the circumstances, Parisien was denied his constitutional rights to be present and to a fair trial. We reverse the criminal judgments and remand for a new trial.

I

[¶ 2] These criminal convictions stem from charges that Parisien physically and sexually assaulted his girlfriend during a two-hour period at her home in St. John on August 27, 2002. Parisien's jury trial be-

gan Tuesday morning, June 22, 2004, and continued through the week. On Friday, June 25, 2004, the trial resumed at 9:30 a.m. After the prosecution and the defense rested their cases, the court informed the jury that final instructions would be prepared and, after deliberations began the court would continue jury deliberations until verdicts were rendered. The jury left the courtroom at 3:40 p.m. The judge later received a note from the jury stating, "Roberta has to go home to care for her 91 yr old mother evenings. No one else available. Also Roberta doesn't drive at night. Several would like to call family members before 5:00." The judge responded at 4:40 p.m. in a note stating, "I'm sorry that I cannot excuse you but I hope you can make some other arrangements with your mother. If you need to make any phone calls, please let the bailiff know." The jury reconvened in the courtroom at 5:05 p.m. for presentation of closing arguments and the closing jury instructions. The jury retired for deliberations at 7:40 p.m.

[¶ 3] During its deliberations, the jury sent several questions to the court. The first jury question relevant to this appeal was sent to the judge at 11:25 p.m. and stated, "Hung jury on Sexual charge. Vote—10–2." After conferring with the prosecutor and defense attorney in chambers without Parisien being present and without the proceedings being recorded, the judge responded to the jury in a note stating, "Please try your best to see if you can arrive at a verdict if you can." At 12:15 a.m. on Saturday, June 26, 2004, the jury sent another note to the judge stating, "Sexual charge[.] Hung jury[.]" After conferring with counsel, again in Parisien's absence and without recordation of the proceedings, the judge responded in a note stating, "1. Have you reached a verdict on the other 2 charges? 2. Would a recess until later today be of any assis-

tance in reaching a verdict?" At 12:27 a.m., the jury responded "yes" to the judge's first question, and in response to the second question stated, "We are taking a break [and] then vote again." At 2:19 a.m., the jury returned verdicts finding Parisien guilty of all three charges.

[¶ 4] After the judgments were entered and the appeals were filed, Parisien, through different counsel, moved under N.D.R.App.P. 10(f) and (h) for modification or correction of the record to reflect what occurred during the in-chamber conferences when the jury questions were addressed. After obtaining the written recollections of the in-chambers conferences from the attorneys involved in those discussions, the trial court found:

1. The written questions and responses are the best evidence as to the decisions made after discussions between the Court and the attorneys.

2. The Court recalls that Mr. Slorby, who was representing Travis at the trial, did make an oral request for a mistrial after the jury could not reach a verdict. This was about five hours after the jury had begun deliberations. Miss O'Donnell resisted the request by stating that it was too early to consider a mistrial. The Court declined to grant the Motion because of the short period of time that the jury had deliberated.

3. The Court was informed by the jury that it had reached a verdict in two cases and could not agree on the third verdict. The Court does not recall that it was informed by the jury in writing that they stood ten to two. If Mr. Slorby had this information, he must have learned of it after the verdict.

4. All of the discussions relating to jury questions were held in the Judge's office. This is a small office that is close to the courtroom. The office door and

the court room door were open. Because the office is small, the Court knows that Travis was not in the office, but may have been in the hall way between the office and the Court room. If Travis was in the court room, he could have easily heard the discussions. Mr. Slorby did not request that Travis be present, and the Court overlooked requiring Travis be present. The Court assumed that his attorney kept him informed as to the communications between the Court and jury.

## II

[¶ 5] The dispositive issues in this case are whether the procedure the trial court used when it answered the jury's questions and the allegedly coercive effect the circumstances surrounding the jury's deliberations had on the guilty verdicts entitle Parisien to a new trial.

## A

[¶ 6] Parisien argues the trial court erred in answering the jury's questions in his absence and without calling the jury into open court.

[¶ 7] A defendant has a right to be present in the courtroom at every stage of trial. *State v. Klose*, 2003 ND 39, ¶ 32, 657 N.W.2d 276; N.D.R.Crim.P. 43(a). Section 29–22–05, N.D.C.C., sets forth the procedure to be followed when a jury has a question for the trial court after the jury has retired for deliberations:

> After the jurors have retired for deliberation, if they desire to be informed on a point of law arising in the cause, or to have any testimony about which they are in doubt or disagreement read to them, they, upon their request, must be conducted into the courtroom by the officer who has them in custody. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the state's attorney and the defendant or his counsel, or after they have been called.

[¶ 8] Although N.D.C.C. § 29–22–05 specifically refers only to jury questions on a "point of law" and jury requests to have testimony read, this Court has long construed the statute to require that all communications with the jurors, after a case has been submitted to them, must be made in open court and in the presence of the defendant. *See Klose*, 2003 ND 39, ¶¶ 32–34, 657 N.W.2d 276; *Hill v. State*, 2000 ND 143, ¶¶ 16–18, 615 N.W.2d 135; *State v. Ash*, 526 N.W.2d 473, 481 (N.D. 1995); *State v. Zimmerman*, 524 N.W.2d 111, 117 (N.D.1994); *State v. Smuda*, 419 N.W.2d 166, 167 (N.D.1988); *State v. Hatch*, 346 N.W.2d 268, 277–78 (N.D.1984). This Court stated in *State v. Klein*, 200 N.W.2d 288, 292 (N.D.1972):

> After a case has been submitted to the jury, the only proper forum for communication between the jury and the judge is in open court, where a proper record may be made of any conversation had. Any such communication should be made in the presence of the entire jury panel, counsel for both sides, and, in a criminal prosecution, in the presence of the defendant.

Because of the constitutional underpinnings of the defendant's right to be present, a violation of the right "is subject to the harmless error standard for constitutional errors—'harmless beyond a reasonable doubt.'" *City of Mandan v. Baer*, 1998 ND 101, ¶ 10, 578 N.W.2d 559 (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). The rights afforded a defendant under N.D.C.C. § 29–22–05 are not absolute, however, and may be waived by failing to object to the trial court's procedure in responding to the jury's request. *See State v. Jahner*, 2003 ND 36, ¶ 10, 657

N.W.2d 266; *see also Baer*, at ¶ 9 (noting constitutional right of the defendant to be present may be affirmatively waived by the defendant).

■ [¶ 9] We hold the trial court erred in responding to the jury's questions without the defendant being present and without calling the jury into open court where a proper record could be made of discussions concerning the jury questions.

## B

[¶ 10] Parisien argues the jury was coerced into rendering the guilty verdicts by being kept "late into the night" to deliberate and by being instructed by the trial court to try to reach a verdict after the court knew the jury was deadlocked and knew of the jury's numerical division.

■ [¶ 11] A trial court has broad discretion over the conduct of a trial, including the time in which a jury may properly deliberate, but the court must exercise this discretion in a manner that best comports with substantial justice. *See Selzler v. Selzler*, 2001 ND 138, ¶ 10, 631 N.W.2d 564; 75B Am.Jur.2d *Trial* § 1648 (1992). It is often stated that the mere length of time a jury is kept in deliberations, in itself, does not establish that a verdict was coerced:

> [M]ere lateness of the hour or length of the jurors' day does not establish that the resulting verdict was coerced; in this regard, the late hour of deliberations does not, by itself, create an inference that one or more jurors might have surrendered their conscientious views to arrive at a verdict. However, while, as a rule, a conviction will not be reversed when the jury reports that it is unable to reach a verdict, is directed to deliberate further, and later returns a verdict, unless the trial court has abused its discretion in some way or the record indicates that the verdict may have been coerced, keeping the jury confined for a long

period after they have reported an inability to agree may, together with other circumstances, amount to coercion.

75B Am.Jur.2d *Trial* § 1648, at p. 424 (footnotes omitted). *See, e.g., People v. Pecka*, 183 Ill.App.3d 60, 131 Ill.Dec. 633, 538 N.E.2d 1189, 1197 (1989) (length of jury deliberations from 1 p.m. until 2:50 a.m. the following morning did not establish improper coercive influence where jurors did not indicate they were deadlocked and nothing in the record showed the verdict arrived at was the result of fatigue or exhaustion); *State v. Trimble*, 371 N.W.2d 921, 925–26 (Minn.App.1985) (length of jury deliberations from 4 p.m. until 2 a.m. the following morning was not coercive where nothing showed the jury felt compelled to deliberate into the late hours of the night).

■ [¶ 12] Nevertheless, "courts have acknowledged that a verdict might be forced where the deliberations of a jury are prolonged beyond a reasonable period, since the verdict of such a jury may be the result of fatigue, exhaustion, weariness, and the physical and mental inability of disagreeing minority jurors to withstand the arguments and importunities of the majority, instead of the result of free action and voluntary agreement of each individual juror." Annot., *Time jury may be kept together on disagreement in criminal case*, 93 A.L.R.2d 627, 632 (1964) (footnote omitted). The "State and the court, independently, have an interest and obligation to assure that the jury reaches a verdict free of extraneous pressures, strain, or discomfort." *State v. Bergeron*, 340 N.W.2d 51, 58 (N.D.1983).

■ [¶ 13] Courts have arrived at varying results in assessing coerciveness when other circumstances combine with prolonged jury deliberations. One circumstance often accompanying prolonged jury

deliberations is a trial court giving a deadlocked jury an instruction based on *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). *See* Annot., *Instructions urging dissenting jurors in state criminal case to give due consideration to opinion of majority (Allen charge)—modern cases*, 97 A.L.R.3d 96 (1980), and cases collected therein. Generally, an *"Allen"* charge, often called the "dynamite" charge "is a supplemental instruction given to encourage deadlocked jurors to reach agreement." *State v. Champagne*, 198 N.W.2d 218, 237 (N.D. 1972). In *Champagne*, at 236, the jury commenced its deliberations at 2:05 p.m. on June 12, 1971, and after receiving a message that the jury was deadlocked, the trial court had the jury return to the courtroom at 12:05 a.m. on June 13, 1971. The trial court gave the jury an *"Allen-type* instruction" stating in part that " 'You should consult again with one another and deliberate to reaching agreement if you can do so without doing violence to your individual judgments,' " and that " 'you should not surrender your honest convictions concerning the effect or weight of evidence for the mere purpose of returning a verdict or solely because of opinion of the other jurors.' " *Id.* at 236. After the jury was given the instruction, it deliberated until 1:15 a.m., when the jury returned a verdict finding the defendant guilty of murder. *Id.* at 237. This Court concluded that, under the circumstances, "the modified *Allen* charge ... did not constitute prejudicial error to the defendant." *Id.* at 239. *See also Davis v. State*, 832 So.2d 239, 240 (Fla.App.2002) (applying totality of the circumstances test, court found no improper coercion where after several hours of deliberation jury sent judge note indicating jury was deadlocked and court told jurors " 'I'm going to send you back to talk about it a little bit more' ").

[¶ 14] However, in *Weaver v. Thompson*, 197 F.3d 359, 365 (9th Cir.1999), the jury sent a note to the judge "at 8:30 p.m., after a full day of trial followed by four hours of deliberations," asking whether the jury must decide all four of the counts. The bailiff relayed the contents of the note to the judge, who had left the courthouse, and the judge told the bailiff he would return immediately to discuss the note with counsel. *Id.* at 361. Before the judge arrived, the bailiff told the jurors they were required to return a verdict on all four counts. *Id.* at 366. Five minutes later, the jury reported it had reached verdicts and found the defendant guilty on all four counts. *Id.* at 361. The court treated the bailiff's comments to the jury as a de facto *Allen* charge, applied a totality of the circumstances test, and concluded the charge had an impermissibly coercive effect on the jury and violated the defendant's due process rights. *Id.* at 365–66. Among the factors relied upon by the court was the absence "of an offsetting cautionary instruction informing jurors that they need not give up their conscientiously held views" and "that the jurors' lengthy day and the lateness of the hour would make them susceptible to influence." *Id.* at 366.

[¶ 15] A trial judge's knowledge of the numerical division of a deadlocked jury is also an important factor to consider in assessing improper coercion. *See* Annot., *Propriety and prejudicial effect of trial court's inquiry as to numerical division of jury*, 77 A.L.R.3d 769 (1977), and cases collected therein. The Supreme Court has long held that a trial court may not ask a deadlocked jury the nature or extent of its numerical division. *See Brasfield v. United States*, 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345 (1926) ("We deem it essential to the fair and impartial conduct of the trial, that the inquiry itself

should be regarded as ground for reversal"); *Burton v. United States,* 196 U.S. 283, 308, 25 S.Ct. 243, 49 L.Ed. 482 (1905) ("[W]e do not think that the proper administration of the law requires such knowledge or permits such a question on the part of the presiding judge. Cases may easily be imagined where a practice of this kind might lead to improper influences"). The "rule is a prophylactic one, designed to shield the jury from the unpredictable effects of both the inquiry itself and the jury's knowledge of the judge's awareness of its division." *United States v. Sae–Chua,* 725 F.2d 530, 531 (9th Cir.1984). The disclosure of a jury's numerical split also has been said to, consciously or subconsciously, influence the judge to insist that the jury continue deliberating and reach a verdict because any holdouts "may give in at any time." *Thomas v. State,* 748 So.2d 970, 979 (Fla.1999). The inadvertent disclosure to the trial court of the nature and extent of the jury's numerical division before the issuance of an *Allen* charge, under some circumstances, has been held to be at least as coercive as the inquiry itself. *See, e.g., Sae–Chua,* 725 F.2d at 531–32; *Williams v. United States,* 338 F.2d 530, 532–33 (D.C.Cir.1964); *see also Thomas,* 748 So.2d at 979 ("Although this information was not requested by the judge, its disclosure was fraught with the danger that any further instruction to deliberate might be construed as pressure on the single 'holdout' to give in. We have recently reiterated that the better practice is for the trial judge to admonish the jury at the outset of deliberations that they should not indicate how they stand during their deliberation"). Although the Ninth Circuit Court of Appeals has indicated that the giving of an *Allen* charge after the trial court has been informed of the jury's numerical division is per se coercive and requires reversal, *see Sanders v. Lamarque,* 357 F.3d 943, 944 (9th Cir.2004),

most courts hold that disclosure of the jury's numerical split is simply a factor to consider in assessing whether the totality of the circumstances indicate a coerced verdict. *See, e.g., United States v. Mejia,* 356 F.3d 470, 477 (2nd Cir.2004); *United States v. Degraffenried,* 339 F.3d 576, 580 (7th Cir.2003); *United States v. Tanios,* 82 F.3d 98, 101 (5th Cir.1996); *Thomas,* 748 So.2d at 979–80; *People v. Logston,* 196 Ill.App.3d 30, 142 Ill.Dec. 525, 552 N.E.2d 1266, 1269–70 (1990). *Annot.,* 77 A.L.R.3d 769, at § 6(c).

[¶ 16] In this case, the jury deliberated from 7:40 p.m. until 2:19 a.m. after a full day of trial, and the trial court instructed the jury to "try your best to see if you can arrive at a verdict" after the jury had informed the court it was "[h]ung" on the "[s]exual charge" by a vote of "10–2." Parisien contends these circumstances show the jury was improperly coerced into reaching the guilty verdicts.

### C

[¶ 17] Although Parisien alleges errors of constitutional dimension which the State carries the burden of establishing are harmless beyond a reasonable doubt, *see, e.g., Clark v. State,* 2001 ND 9, ¶ 15, 621 N.W.2d 576, Parisien's trial attorney did not object to the procedure the trial court used to answer the jury's questions or to the supplementary jury instructions given during deliberations. When a problem arises during a trial, the party affected must bring the irregularity to the trial court's attention and seek appropriate remedial relief, because issues not raised below, even constitutional issues, generally will not be addressed on appeal unless the alleged error rises to the level of obvious error under N.D.R.Crim.P. 52(b). *State v. Miller,* 2001 ND 132, ¶ 24, 631 N.W.2d 587. To establish obvious error, the defendant has the burden of establishing plain error

that affects substantial rights. *State v. Krull,* 2005 ND 63, ¶ 6, 693 N.W.2d 631. Only constitutional error that is "egregious" or "grave" is subject to the obvious error rule. *State v. Murphy,* 527 N.W.2d 254, 257 (N.D.1995). Under the totality of the circumstances in this case, we conclude Parisien has established obvious error affecting his substantial constitutional rights to be present and to a fair trial.

[¶ 18] June 25, 2004, was a Friday before an early summer weekend. Trial proceedings commenced at 9:30 a.m. that day and the jury did not return verdicts until 2:19 a.m. the following morning, almost 17 hours after proceedings began. At least one juror, before deliberations started, expressed reservations about staying at the courthouse into the night because of her inability to find someone to care for her elderly mother and her reluctance to drive at night. The trial court received questions from the jury at 11:25 p.m. and 12:15 a.m. indicating the jurors were unable to arrive at a verdict on the "[s]exual charge." Parisien was not present during the in-chambers discussions between the trial court and counsel regarding proper responses to the questions. Although Parisien's trial attorney did not object to Parisien's absence, Parisien filed an affidavit with the trial court stating he did not discover until after the trial had concluded that the jury sent questions to the judge and "I was not asked to give up my right to be present nor did I give my permission to any person to waive my right to be present when these discussions took place." Parisien's trial attorney explained that the reason for Parisien's "absence [from the in-chamber discussions] is I was quite exhausted at the time and quite frankly too tired to have thought of it." The prosecutor did not "recall the subject of the defendant waiving his right to be present being brought up in any manner," and confirmed that "[i]t had been a long trial, and everyone was exhausted." It is safe to assume the jury was equally "exhausted."

[¶ 19] The jury also was not called into open court where a proper record could be made of the discussions concerning the jury questions as required under this Court's interpretations of N.D.C.C. § 29–22–05. If this procedure had been followed, the trial court and counsel would have had an opportunity to observe the appearance of the jurors and the sounds of their voices in assessing the effect these prolonged late-night deliberations were having on the jurors and in deciding whether to adjourn or to continue deliberations until verdicts were rendered. If the trial court had conducted its communications in open court, or if the in-chambers discussions had been recorded, a complete record of the proceedings also would have been made to enable us to determine whether Parisien knowingly and voluntarily forfeited any objection to these procedural irregularities. *See, e.g., United States v. Neff,* 10 F.3d 1321, 1324 (7th Cir.1993).

[¶ 20] Although the trial court in its order for modification or correction of the record said it did "not recall that it was informed by the jury in writing that they stood ten to two" and that Parisien's trial attorney "must have learned of it after the verdict," the jury's 11:25 p.m. note to the judge states the vote was "10–2," and no record was made of the in-chamber discussions. The trial court inadvertently obtained knowledge of the deadlocked jury's numerical division and then instructed the jury to "try your best to see if you can arrive at a verdict if you can." The trial court did not include an offsetting cautionary instruction informing the jurors they need not give up their conscientiously held views, which should accompany an *Allen-*

type charge whether or not the judge has knowledge of the jury's numerical division. *See Weaver*, 197 F.3d at 366; *see also Champagne*, 198 N.W.2d at 237 (quoting *Benzmiller v. Swanson*, 117 N.W.2d 281, 289 (N.D.1962)) (" 'trial courts should scrupulously avoid any statement or suggestion which would induce the jurors to conciliate arbitrarily or coerce them into returning a verdict at the cost of any juror's surrendering his honest convictions' "). When the jury again informed the trial court at 12:15 a.m. that it was "[h]ung" on the "[s]exual charge," the court asked if the jury had reached a verdict on the other charges and whether "a recess until later today [would] be of any assistance in reaching a verdict." The jury decided to take a break and "vote again." The totality of the circumstances indicate the jurors were susceptible to influence and could have formed the belief that they would not be allowed to leave until a verdict had been rendered.

[¶ 21] Given the jury's 17–hour workday, the lateness of the hour, the trial court's knowledge of the deadlocked jury's numerical division, the two responses to the jurors encouraging them to continue to try to reach a verdict, the failure of the court to follow the proper procedure in addressing the jury's questions, and the lack of a record of the in-chamber conferences, we conclude that Parisien's right to be present was violated and the verdicts were improperly coerced in violation of Parisien's due process right to a fair trial. Although the jury indicated it was deadlocked only on the sexual assault charge, we do not know what verdicts, if any, the jury had reached on the other two charges when it sent its first note to the judge at 11:25 p.m.

 [¶ 22] In the past, this Court has declined to reverse convictions based on the cumulative effect of any alleged errors because the asserted errors were not errors or, if they were error, they were not unfairly prejudicial. *See, e.g., State v. Ebach*, 1999 ND 5, ¶ 16, 589 N.W.2d 566; *State v. Sievers*, 543 N.W.2d 491, 498 (N.D. 1996). However, while each of the errors in this case, standing alone, arguably may have been harmless, the errors are so intertwined and interrelated that we conclude the cumulative effect of the errors requires reversal of all three criminal judgments and a remand for a new trial. *See Schuhmacher v. North Dakota Hosp. Ass'n*, 528 N.W.2d 374, 383 (N.D.1995); *Fuhrman v. Fuhrman*, 254 N.W.2d 97, 98 (N.D.1977).

## III

[¶ 23] Parisien also argues the trial court failed to give a correct closing jury instruction regarding deliberations in the jury room and erred during the trial in allowing admission of prior-act evidence.

 [¶ 24] We decline to rule on Parisien's challenge to the jury instruction because Parisien's trial attorney did not object to the instruction that was given, *see, e.g., Jahner*, 2003 ND 36, ¶ 12, 657 N.W.2d 266, and because this alleged error is not likely to recur on remand. If the same instruction is offered during a new trial, Parisien's attorney may object at that time to give the trial court an opportunity to correct any alleged deficiencies the instruction might contain.

 [¶ 25] We also decline to determine whether the trial court erred in admitting the challenged prior-act evidence because resolution of the issue is not necessary to the disposition of the appeal and because the issue may not arise on retrial. However, we do note that under N.D.R.Ev. 404(b), evidence of prior bad acts or crimes is generally not admissible unless it is substantially relevant for some

purpose other than to point out the defendant's criminal character and thus to show the probability that the defendant acted in conformity therewith. *State v. Osier,* 1997 ND 170, ¶ 4, 569 N.W.2d 441. The rule acknowledges the inherent prejudicial effect prior-act evidence may have on the trier of fact. *State v. Micko,* 393 N.W.2d 741, 744 (N.D.1986). Under N.D.R.Ev. 404(b), the trial court is required to apply a three-step analysis which considers: 1) the purpose for which the evidence is introduced; 2) the evidence of the prior act or acts must be substantially reliable or, clear and convincing; and 3) in criminal cases, there must be proof of the crime charged which permits the trier of fact to establish the defendant's guilt or innocence independently on the evidence presented, without consideration of the evidence of the prior acts. *State v. Christensen,* 1997 ND 57, ¶ 6, 561 N.W.2d 631. If the trial court concludes this three-part test has been satisfied, the evidence is not yet automatically admissible, for the court must further determine whether, under N.D.R.Ev. 403, the probative value of the evidence outweighs any possible prejudicial effect. *State v. Ramsey,* 2005 ND 42, ¶ 26, 692 N.W.2d 498.

[¶ 26] The record in this case reflects the trial court followed the three-part test in determining that the prior-act evidence was admissible. The record does not affirmatively show that the trial court applied the N.D.R.Ev. 403 balancing test to weigh the probative value of the evidence against the possible prejudicial effect to Parisien. Trial courts should place on the record their reasons for admitting or excluding prior-act evidence to show that they have complied with all of the N.D.R.Ev. 404(b) and 403 requirements.

IV

[¶ 27] We reverse the criminal judgments and remand for a new trial.

[¶ 28] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

[¶ 29] The Honorable DANIEL J. CROTHERS did not participate in this decision.