**FILED**
**IN THE OFFICE OF THE**
**CLERK OF SUPREME COURT**
**JULY 19, 2023**
**STATE OF NORTH DAKOTA**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2023 ND 130

State of North Dakota,                                          Plaintiff and Appellee

  v.

Jeremy Robert Knight,                                    Defendant and Appellant

## No. 20230020

Appeal from the District Court of Mercer County, South Central Judicial District, the Honorable Bruce A. Romanick, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Todd A. Schwarz, State's Attorney, Stanton, ND, for plaintiff and appellee; submitted on brief.

Alex S. Kelsch, Mandan, ND, for defendant and appellant; submitted on brief.

# State v. Knight
## No. 20230020

**McEvers, Justice.**

[¶1]   Jeremy Knight appeals from the order denying his motion to vacate the criminal judgment and for a new trial and a criminal judgment entered after a jury found him guilty of gross sexual imposition. On appeal, Knight argues the district court erred in instructing the jury to reach a verdict after learning of the numerical division of the deadlocked jury. He also argues the court erred in denying his motion to vacate judgment and for a new trial. We affirm.

I

[¶2]   Jeremy Knight was charged with two counts of gross sexual imposition in May 2021. A jury trial was held in August 2022. Jury deliberations began on the second day of trial around 11:30 a.m. Less than an hour into jury deliberations, the jury posed a number of questions to the district court. The court answered the questions without objection. A short time later, the jury had another question which the court answered without objection. At 1:34 p.m., the court received another note from the jury that made the court aware of a deadlocked jury on both counts. The handwritten note used the phrase "verdict form" and showed the numerical division of both counts being deadlocked at 8–4 and 9–3. The court then stated to the jury:

> I'm going to indicate to the jury that I'm going to send you back into the jury room. You've got to continue to work to try and get to unanimous verdict.
> You might think it's a long time but you had a day plus testimony working and it hasn't been that long. So I need you to go back, kind of review the evidence again and try and come to unanimous verdict and then we'll move from there.
> So that's all I'm going to say. And then Donna's going to take you back into the jury room. So back to work is what I'm going to say.

Again, there was no objection to the court's response to the jury's communication. The jury went back to deliberating after being encouraged to do so by the court.

1

[¶3]  The district court received the next communication at 3:28 p.m., which indicated the jury reached a unanimous verdict finding Knight guilty of the gross sexual imposition charge in count 2 but failed to reach a verdict on the charge in count 1. After the verdict was read, the jury was polled and all jurors indicated the verdict was correct.

[¶4]  Following trial, the attorneys spoke with the jurors. Juror No. 6 stated it was her understanding that the district court's comments to the jury meant the jury had no choice but to reach a unanimous verdict, and, had she known they could remain deadlocked on both counts, the jurors would have done so. Based on this information, Knight filed a motion to vacate the judgment and requested a new trial under N.D.R.Crim.P. 33.

[¶5]  In November 2022, the district court denied Knight's motion to vacate judgment and for a new trial. In its order, the court stated it would not consider the declaration of Juror No. 6 because N.D.R.Ev. 606(b)(1) does not allow the court to consider affidavits or declarations from jurors pertaining to the jurors' mental process during deliberations. Furthermore, the court found its instruction to the jury regarding further deliberation to try to reach a verdict was not erroneous or prejudicial. Knight appeals.

II

[¶6]  We review a district court's decision on a motion for new trial under N.D.R.Crim.P. 33 under the abuse of discretion standard. *State v. Kovalevich*, 2015 ND 11, ¶ 10, 858 N.W.2d 625. A court abuses its discretion when it acts in an arbitrary, unreasonable, or capricious manner, or it misinterprets or misapplies the law. *Id.* A defendant is required to assert all alleged errors with particularity in a motion for a new trial. *Id.*; N.D.R.Crim.P. 33(a). "[A]lthough a motion for a new trial is not necessary to preserve issues for appellate review, when a new trial is sought, a defendant is limited on appeal to the grounds presented to the district court in the motion for a new trial." *Kovalevich*, 2015 ND 11, ¶ 10 (quoting *State v. Yarbro,* 2014 ND 164, ¶ 9, 851 N.W.2d 146).

## III

[¶7]   Knight argues the jury was coerced into rendering the guilty verdict when the district court told the jury to continue working to try to come to a unanimous verdict after the court knew the jury was deadlocked and knew of the jury's numerical division.

[¶8]   A district court has broad discretion over the conduct of a trial, including the time in which a jury may properly deliberate, but the court must exercise this discretion in a manner that best comports with substantial justice. *State v. Parisien*, 2005 ND 152, ¶ 11, 703 N.W.2d 306. One circumstance often accompanying prolonged jury deliberations is a trial court giving a deadlocked jury an instruction based on *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). An *Allen* charge is generally a supplemental instruction given to encourage deadlocked jurors to reach agreement. *State v. Champagne*, 198 N.W.2d 218, 237 (N.D. 1972). Importantly, modified *Allen* charges will not constitute prejudicial error to the defendant when the court tells the jury to deliberate further but reminds them to not surrender their honest convictions solely for the purpose of returning a verdict. *Id*. at 239. An offsetting cautionary instruction informing the jurors they need not give up their conscientiously held views should accompany an *Allen*-type charge. *Parisien*, 2005 ND 152, ¶ 20. Courts often apply a "totality of the circumstances" test when deciding the effect of an *Allen* charge. *See Davis v. State*, 832 So.2d 239, 240 (Fla.App.2002) (court found no improper coercion where after several hours of deliberation jury sent judge note indicating jury was deadlocked and court told jurors "I'm going to send you back to talk about it a little bit more").

[¶9]   Many factors are considered when assessing coerciveness:

> Any claim that a jury was pressured into reaching a verdict depends on the totality of the circumstances. A verdict is considered coerced when, under the totality of the circumstances, it appears that the trial court was virtually directing that a verdict be reached, and, by implication, indicated it would hold the jury until this happens. The factors considered are the content of the communication, the length of deliberations after it, the total length of deliberations, and any indicia in the record of coercion or

pressure. Generally, a direction to continue deliberating or to return to the jury room and continue working is not unduly coercive. In the case of a jury deadlocked at the time of the communication, the question is whether the communication may have hastened the verdict, coerced the juror into making a decision that he or she did not believe was correct, or otherwise interfered with the deliberations in a manner prejudicing a party. The test effectively turns on consideration of whether the court's reply imposed such confusion or pressure on the jury to reach a verdict that the accuracy and integrity of the verdict returned becomes uncertain. A judge may insure that no juror would be embarrassed or pressured, by emphasizing that the deliberations should continue without violence to individuals' judgment or conscience, or that the jury was free to return if it found the deliberation process to be hopeless.

75B Am.Jur.2d *Trial* § 1280 (footnotes omitted). A verdict might be forced where the deliberations of a jury are prolonged beyond a reasonable period, since the verdict of such a jury may be the result of fatigue, exhaustion, weariness, and the physical and mental inability of disagreeing minority jurors to withstand the arguments and importunities of the majority, instead of the result of free action and voluntary agreement of each individual juror. *Parisien*, 2005 ND 152, ¶ 12. A trial judge's knowledge of the numerical division of a deadlocked jury is also an important factor to consider in assessing improper coercion, and a trial court may not ask a deadlocked jury the nature or extent of its numerical division. *Id.* at ¶ 15.

[¶10] In *Parisien*, we held verdicts were improperly coerced due to the jury's 17-hour workday, the lateness of the hour, the trial court's knowledge of the numerical division, the lack of a record of in-chamber conferences, the failure of the court to follow proper procedure in addressing the jury's questions, and the encouragement to jurors to try to reach a verdict. 2005 ND 152, ¶ 21. During Parisien's trial, the district court instructed the jury to "try your best to see if you can arrive at a verdict if you can" after finding out the jury was hung 10–2. *Id.* at ¶ 20. The final day of trial proceedings commenced at 9:30 a.m. and verdicts were not returned until 2:19 a.m. the following morning. *Id.*

at ¶¶ 2–3. We held the cumulative effect of all these circumstances lead to improperly coerced verdicts. *Id*. at ¶ 21.

[¶11] The circumstances here are notably different than that of *Parisien* and other jury coercion cases. First, the jury deliberations here were not nearly as long as the 17-hour day in *Parisien*. The trial proceedings on the day of the verdicts were only about six and a half hours from start to finish. The jury came back to read the verdict around 3:33 p.m., which is a reasonable hour, unlike the 2:19 a.m. jury return in *Parisien*. Moreover, the court instructed the jury to "try" to come to a verdict. The court did not say the jury must come to a verdict—just that they should continue to try since deliberations had not been going on for very long. Furthermore, Knight did not point to any instances of the court conducting in-chamber conferences off the record or failing to follow proper procedure when answering any of the jury's questions. The record does not contain evidence of either.

[¶12] We also consider the district court's lack of a cautionary instruction accompanying the *Allen* charge it gave the jury as well as its knowledge of the numerical division of the deadlock. Although it is best practice for the court to qualify its *Allen* charge with cautionary instructions for the jurors not to abandon their honest convictions, failure to do so under the circumstances here does not show coercion. The district court noted in its order that, although not reiterated when it answered the jury's question, the original jury instructions stated the jurors should only reach an agreement if they are able to do so without giving up their individual judgment. We presume the jury followed the court's instructions. *See State v. Patterson*, 2014 ND 193, ¶ 15, 855 N.W.2d 113.

[¶13] As to the district court being aware of the numerical division of the jury, that information came to the court unsolicited. A court may not ask a deadlocked jury the nature or extent of its numerical division. *Brasfield v. United States,* 272 U.S. 448, 450, 47 S.Ct. 135, 71 L.Ed. 345 (1926). However, the mere fact that the court became aware of the numerical division does not create a bright line rule that its instruction is presumed coercive. *See Rosales v. State,* 548 S.W.3d 796, 803 (Tx. Ct. App. 2018) (holding no abuse of discretion denying a mistrial when the jury sent the court a note indicating it was

deadlocked 9–3 after four hours and forty minutes of deliberation and the judge instructed the jury to "please continue your deliberations."); *Com. v. Greer,* 951 A.2d 346, 360 (Pa. Sup. Ct. 2008) (unpersuaded by the argument that the fact the court knew the jury's numerical division, as well as the identities of the holdouts as volunteered by the jury forewoman, makes an otherwise non-coercive instruction coercive). Here, despite being aware of the note's content, there was no objection or motion for mistrial made by Knight which would have provided the court an opportunity to take corrective action or provide a different admonishment if the parties thought it was necessary. Under the totality of the circumstances, the record does not indicate a coerced verdict. The district court did not abuse its discretion by denying the motion for new trial based on the court's instruction to continue deliberating.

IV

[¶14]  Knight argues the district court should have considered the declaration of Juror No. 6 when deciding whether to grant his motion to vacate the judgment and for a new trial.

[¶15] We apply an abuse of discretion standard when reviewing a district court's decision on a motion for a new trial involving issues raised under N.D.R.Ev. 606(b). *Kovalevich*, 2015 ND 11, ¶¶ 16–23. Rule 606(b)(1), N.D.R.Ev., discusses prohibited testimony of other evidence and states:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's declaration or evidence of a juror's statement on these matters.

[¶16] Rule 606(b)(2) provides four exceptions about which a juror may testify: whether extraneous prejudicial information was improperly brought to the jury's attention; whether an outside influence was improperly brought to bear on any juror; whether the verdict was arrived at by chance; or whether a mistake was made in entering the verdict on the verdict form. It is improper

for a court to consider juror affidavits for purposes of impeaching a verdict relative to the mental processes or reasoning of the jurors in arriving at a decision. *Mauch v. Mfrs. Sales & Serv., Inc.*, 345 N.W.2d 338, 343 (N.D. 1984).

[¶17] Knight asserts the district court should have considered the declaration of Juror No. 6 in which she claimed she would not have found Knight guilty on count 2 if she knew the jury could remain hung on both counts and not just one count. Knight is asking the court to consider an affidavit pertaining to the mental process of Juror No. 6 during deliberations, which is expressly prohibited by Rule 606(b)(1). "An attempt to use juror affidavits to demonstrate how the jury arrived at its decision falls precisely within the confines of the rule prohibiting impeachment of the jury verdict." *Andrews v. O'Hearn*, 387 N.W.2d 716, 719 (N.D. 1986). Whether Juror No. 6 misunderstood the court's instruction, although objectively verified here, makes no difference. There are strong policy reasons which demand a strict interpretation of the rule. *Id.* at 722. These considerations include the potential detriment to the jury system because considering such affidavits would unsettle verdicts if a juror would be permitted to say they did not understand the charge of the court. *Id.* at 719. To allow such statements would result in continual embarrassment and interminable controversy after trials—after a verdict had been duly announced—and would subject jurors to constantly be called upon to discuss occurrences in the jury room, which should be kept secret and privileged. *Id.*

[¶18] Moreover, Knight does not point to any of the four exceptions listed in Rule 606(b)(2) that would apply to his situation, and the record does not indicate any exception applies. There is no evidence suggesting any juror received extraneous prejudicial information or outside influence or the verdict came by chance or mistake.

[¶19] While this outcome may seem harsh given Juror No. 6's declaration, N.D.R.Ev. 606(b) protects the internal workings of juries. However, other procedural rules allow a party to attack the verdict itself if it is not supported by the evidence. *Andrews,* 387 N.W.2d at 722; N.D.R.Crim.P. 29. No such challenge to the sufficiency of the evidence was made in the motion for new trial or on appeal.

[¶20] We conclude the court did not abuse its discretion by not considering the declaration of Juror No. 6 and thereby denying Knight's motion to vacate judgment and for a new trial based on this issue.

V

[¶21] The order denying the motion to vacate the criminal judgment and for a new trial and the criminal judgment are affirmed.

[¶22] Jon J. Jensen, C.J.
Lisa Fair McEvers
Jerod E. Tufte
Douglas A. Bahr
James D. Hovey, D.J.

[¶23] The Honorable James D. Hovey, D.J., sitting in place of Crothers, J., disqualified.