2006 ND 96

**In the Interest of J.M.**

**Cynthia M. Feland, Petitioner and Appellee**

v.

**J.M., Respondent and Appellant.**

No. 20050383.

Supreme Court of North Dakota.

May 11, 2006.

Susan Schmidt, Bismarck, N.D. for respondent and appellant.

Cynthia M. Feland, Assistant State's Attorney, Bismarck, N.D. for petitioner and appellee.

MARING, Justice.

[¶ 1] J.M. appeals from an October 28, 2005, order committing him as a sexually dangerous person. J.M. argues the trial court erred by not dismissing the petition for commitment on the grounds the commitment hearing was not held within sixty days after the finding of probable cause. He also argues there was not sufficient evidence presented to commit him as a sexually dangerous person. We affirm.

I

[¶ 2] On December 28, 1998, J.M. pled guilty to corruption of a minor involving a sexual act committed on a minor victim. On August 22, 2001, J.M. pled guilty to gross sexual imposition involving a nine-year-old child and was sentenced to ten years with the North Dakota Department of Corrections, with five years suspended. On March 23, 2005, the State petitioned to commit J.M. as a sexually dangerous person. A preliminary hearing on the petition was held on March 29, 2005. The trial court found probable cause existed to believe that J.M. is a sexually dangerous person and ordered an evaluation to be completed at the North Dakota State Hospital within sixty days.

[¶ 3] On April 13, 2005, the State moved to transfer J.M. from the State Hospital back to the North Dakota State Penitentiary until he completed his sentence in November 2005. The trial court granted the motion on April 14, 2005. J.M. was not notified of this motion and had no opportunity to respond.

[¶ 4] On July 19, 2005, J.M. moved to dismiss the petition for commitment asserting that a commitment hearing had not been held within sixty days after the finding of probable cause, as required under N.D.C.C. § 25–03.3–13. The trial court denied J.M.'s motion, relying on its discretion under N.D.C.C. § 25–03.3–13 to extend the sixty-day limit upon a showing of good cause. A commitment hearing was scheduled for September 8, 2005, but, at the State's request, was rescheduled for September 28, 2005.

[¶ 5] Evaluations of J.M. by two experts were completed at the North Dakota State Hospital and filed with the trial court on September 6, 2005. J.M. request-

ed an independent examination and his request was granted. J.M. also moved for a continuance to allow the independent expert time to conduct an evaluation. As a result, the commitment hearing was again rescheduled, this time for October 21, 2005. The State moved for another continuance. The hearing was finally held October 26, 2005.

[¶ 6] At the commitment hearing, clinical psychologists Joseph Belanger, Ph.D., and Rosalie Etherington, Ph.D., testified that J.M. suffered from antisocial personality disorder and was likely to commit sexually predatory activity in the future. Following the testimony, the trial court found J.M. was a sexually dangerous person and committed him to the North Dakota State Hospital for treatment.

[¶ 7] On appeal, J.M. argues the petition for commitment should have been dismissed because the commitment hearing was not held within sixty days of the finding of probable cause. He also argues the evidence presented at the commitment hearing was insufficient to support his commitment as a sexually dangerous person.

## II

[¶ 8] J.M. argues the State did not meet its burden of presenting sufficient evidence to commit him as a sexually dangerous person.

[¶ 9] Commitment as a sexually dangerous person is governed by N.D.C.C. ch. 25–03.3. Involuntary commitment of an individual is authorized when the State can establish by clear and convincing evidence that the individual is a sexually dangerous individual. N.D.C.C. § 25–03.3–13. A sexually dangerous individual is one who:

[I]s shown to have engaged in sexually predatory conduct and who has a congenital or acquired condition that is manifested by a sexual disorder, a personali-

ty disorder, or other mental disorder or dysfunction that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

N.D.C.C. § 25–03.3–01(8). Thus, commitment of an individual as sexually dangerous requires the State to establish by clear and convincing evidence:

(1) the individual has engaged in sexually predatory conduct; (2) the individual has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction; and (3) the disorder makes the individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

*In the Matter of G.R.H.*, 2006 ND 56, ¶ 6, 711 N.W.2d 587.

[¶ 10] In *In the Matter of G.R.H.*, our Court upheld the commitment of a person diagnosed with antisocial personality disorder as a sexually dangerous individual. 2006 ND 56, 711 N.W.2d 587. Recognizing, as the United States Supreme Court did in *Kansas v. Crane,* that constitutional considerations require proof that the individual's disorder or dysfunction in some way causes that individual serious difficulty in controlling his or her behavior, our Court stated:

[W]e construe the definition of a sexually dangerous individual to mean that proof of a nexus between the requisite disorder and dangerousness encompasses proof that the disorder involves serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from the dangerous but typical recidivist in the ordinary

criminal case. We conclude that nexus between the requisite disorder and future dangerousness satisfies the due process requirements of Crane. 2006 ND 56, ¶ 18, 711 N.W.2d 587; *see also Kansas v. Crane*, 534 U.S. 407, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). A diagnosis of antisocial personality disorder does not, per se, establish a nexus between the requisite disorder and future dangerousness. The evidence must clearly show the antisocial personality disorder is likely to manifest itself in a serious difficulty in controlling sexually predatory behavior.

[¶ 11] In reviewing a trial court's order committing an individual as sexually dangerous, this Court applies a modified clearly erroneous standard and will affirm unless the order is induced by an erroneous view of the law, or we are firmly convinced the order is not supported by clear and convincing evidence. *In re M.D.*, 1999 ND 160, ¶ 34, 598 N.W.2d 799.

[¶ 12] The evidence in the record clearly and convincingly establishes that J.M. has engaged in sexually predatory conduct. Sexually predatory conduct is defined at N.D.C.C. § 25–03.3–01(9). Relevant in this case, that definition includes engaging in a sexual act or sexual contact with another individual if the victim is less than fifteen years old or the victim is a minor and the actor is an adult. N.D.C.C. § 25–03.3–01(9)(a)(4) and (7). J.M. pled guilty in 1998 to corruption of a minor involving a sexual act committed on a minor victim after he had sexual intercourse with a fifteen-year-old girl. J.M. was eighteen at the time of the encounter. J.M. also pled guilty in 2001 to gross sexual imposition after admitting he had digitally penetrated a nine-year-old girl.

[¶ 13] The evidence in the record also clearly and convincingly establishes that J.M. has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction and that the disorder makes J.M. likely to engage in further acts of sexually predatory conduct. At the commitment hearing, both clinical psychologists testified that they had diagnosed J.M. with a severe antisocial personality disorder that would make it difficult for him to, in the future, avoid reengaging in sexually predatory conduct.

[¶ 14] In this case, Dr. Belanger testified that the diagnosis of antisocial personality disorder was "extremely germane" to a determination of whether J.M. should be committed as a sexually dangerous person:

Because this isn't a garden variety antisocial personality disorder. This is someone who by the severity of the antisocial personality disorder has also buttressed not just by the overwhelming score overall on the PCL–R 2nd Edition, he's at the 99 percentile overall. But if you look at the tacit factors and facet score of the PCL–R, particularly factor 1, these would be strong evidence if one were to ask questions out of *Kansas v. Crane*, which is, Does [sic] the requisite mental condition create a diminishment of volitional capacity such as the individual would have serious difficulty in conforming his conduct to the code of laws? The answer would be yes, because seven out of seven on the antisocial personality disorder, because a score of 34 overall on the PCL–R 2nd Edition makes him 99 percentile, because an extremely high tacit one score and extremely high facet one score, these are exactly the measures that were taken in the Newman Labs and other zones where people have researched psychopathy as showing an underlying deficit in response modulation. He has got the same scores as those individuals. They have shown clear unequivocal laboratory evidence of a deficit in response modulation. That's

the best operational you are going to get of diminishment of volitional capacity; and therefore I find it very important to underlining [sic] considerations of the Court that it is a personality disorder that makes him likely to engage.

Dr. Etherington's conclusion was also that J.M.'s antisocial personality disorder made him likely to engage in future predatory conduct, based both on her own diagnosis and J.M.'s scores on the MnSOST, Static 99, and RRASOR actuarial assessment tools.

[¶ 15] The trial court's findings of fact and order committing J.M. as a sexually dangerous person are supported by clear and convincing evidence.

### III

[¶ 16] J.M. argues the trial court erred by not dismissing the petition for commitment on the grounds the commitment hearing was not held within sixty days after the finding of probable cause.

[¶ 17] As this Court made very clear in *In re M.D.*, our trial courts must be mindful that proceedings for commitment as a sexually dangerous person, although civil in nature, implicate the liberty interests of the person sought to be committed. 1999 ND 160, ¶ 18, 598 N.W.2d 799. The deprivation of liberty resulting from commitment as a sexually dangerous individual can, in many cases, be greater than that imposed as a criminal sanction for the underlying sexually predatory conduct which brought the individual to the State's attention. In *In re M.D.*, we attempted to keep these liberty interests in the forefront of those who bring and decide these cases.

[¶ 18] Several of the cases recently before this Court, however, lead us to doubt that our admonition in *In re M.D.* is considered any longer—let alone heeded. *See, e.g., In Interest of P.F.*, 2006 ND 82. The crimes our sexual predator commitment statutes seek to protect the public from are often the most heinous of crimes; actions rightfully deserving of the outrage they provoke in society. They are crimes that violate the victim physically, emotionally, psychologically, and spiritually; taking what should only be given by an individual's most personal of choices. Nevertheless, our trial courts and practitioners must always remain cognizant that the fervor of a rightfully outraged public to prevent these crimes cannot be allowed to overcome the necessary safeguards to individual liberty the law has established. The crimes of the sexual predator must not be allowed to impassion a system that relies on the dispassion of those who mete out its justice. Our system demands zeal, but should not tolerate zealotry.

[¶ 19] What remains for us to decide is if the State's errors in this case rise to such a level that they demand we vacate the order of commitment. In essence, do we fire another shot across the bow, as we did *In re M.D.*, or do we require the consequence we then withheld?

[¶ 20] The State's errors began with the March 23, 2005, notice of rights served on J.M. with the petition for commitment. In that document, the State informs J.M. that if probable cause is determined, "you will have the right to a Commitment Proceeding within thirty (30) days of the finding of probable cause." Although thirty days was once the time allowed for a commitment proceeding under N.D.C.C. § 25–03.3–13, that statute was amended and re-enacted in 2001 to allow for sixty days. 2001 N.D. Sess. Laws ch. 256, § 11.

[¶ 21] After the trial court found probable cause, the State filed an April 13, 2005, motion to have J.M. transported from the State Hospital to the State Peni-

tentiary. The State failed to serve a copy of the motion on J.M. or his attorney. Also, while the State alludes in the motion to a letter from the State Hospital indicating the hospital was too busy to get a psychological evaluation of J.M. done within the sixty-day period, that letter cannot be found anywhere in the record. Nevertheless, the trial court granted the motion.

[¶ 22] On July 21, 2005, J.M. moved to dismiss the petition following the expiration of the sixty-day time period for a commitment hearing. The State responded arguing that the State Hospital's heavy workload, which was alluded to in its motion for transfer, constituted good cause for an extension under N.D.C.C. § 25–03.3–13, and that "[w]hile the title of the motion did not specifically request an extension, the motion itself did explain a 'good cause' basis for an extension in which to complete the evaluation." Again, with no evidence submitted to support the State's allegations, the trial court denied J.M.'s petition and ordered the hearing to be held as soon as possible after completion of the evaluation.

[¶ 23] At oral argument, the State admitted it was in error. We agree. However, under our prior holdings, none of these errors, in and of themselves, constitute an error such that we must vacate the order for commitment. In *In re M.D.*, we said that a trial court's failure to make a finding of good cause to extend the time for holding a commitment hearing prior to the expiration of the time mandated by statute did not necessitate vacating a subsequent order for commitment. 1999 ND 160, ¶ 16, 598 N.W.2d 799. Additionally, in the context of proceedings for the commitment of an individual as a sexually dangerous person, we recently stated that an individual seeking relief from a delay in commitment proceedings must show that the delay violated his rights. *See In the Interest of B.V.*, 2006 ND 22, ¶ 19, 708 N.W.2d 877 (citing to *Holen v. N.D. Workers Comp. Bureau*, 2000 ND 145, ¶ 9, 615 N.W.2d 141). J.M. cannot show he was prejudiced by the delay. The State petitioned to commit J.M. while he was still incarcerated for the gross sexual imposition charge. The order for commitment was issued by the trial court on October 28, 2005, before J.M. was to have been released from the State Penitentiary. Although J.M. argues his rights were violated in that he had greater liberties while at the State Penitentiary than while being held at the State Hospital, we find this argument unpersuasive. We do not see how, under the facts of this case, J.M. was prejudiced by the delay in holding the commitment hearing.

[¶ 24] We have also stated that N.D.C.C. § 25–03.3–13 gives the trial court discretion to determine if good cause has been shown. *In re M.D.*, 1999 ND 160, ¶ 15, 598 N.W.2d 799. "A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or it misinterprets or misapplies the law." *State v. Hoverson*, 2006 ND 49, ¶ 13, 710 N.W.2d 890. With the increase in the number of cases involving commitment as a sexually dangerous person that our trial courts must handle, it is evident that our State Hospital is having difficulty timely handling the evaluations. Nevertheless, our trial courts must require evidence be introduced into the record when determining if good cause is shown to extend the time for the commitment hearing because of a delay due to the backlog at the State Hospital. The use of proper motion practice is expected in these cases. *See In the Interest of P.F.*, 2006 ND 82, ¶ 13, 712 N.W.2d 610.

[¶ 25] Under the facts of this case, we hold the trial court's decision that there was good cause was not an abuse of discretion. The trial court stated that its reason for granting the extension was because "it was impossible to have the civil commitment evaluation done in time to schedule the hearing within sixty days." We do not believe, however, that such delays, now readily apparent to the State, can continue to automatically constitute good cause. *See In the Interest of P.F.,* 2006 ND 82, ¶ 15. Prior to 2001, N.D.C.C. § 25–03.3–13 gave just thirty days between the time of the finding of probable cause and the commitment hearing. *See In re M.D.,* 1999 ND 160, ¶ 11, 598 N.W.2d 799; *see also* 2001 N.D. Sess. Laws ch. 256, § 11. The legislature, addressing the State Hospital's concerns that thirty days was not long enough, rejected a proposal to extend the period to ninety days and instead adopted the current sixty-day time period. *See Hearing on S.B.2034 Before the Senate Judiciary Comm.,* 57th N.D. Legis. Sess. (Jan. 15, 2001) (testimony of Jean R. Mullen, Assistant Attorney General). If our legislature agrees that the State Hospital cannot be expected to complete its evaluations within sixty days, it can say so. If not, we must uphold the attempt to balance individual liberties with the practical concerns of the State Hospital that our legislature sought to implement. Although there will no doubt occasionally be special circumstances for which the State Hospital's inability to conduct evaluations within sixty days will constitute good cause, this reason cannot remain the blanket excuse it has become. *See In the Interest of P.F.,* 2006 ND 82, ¶ 15; *see also In re M.D.,* 1999 ND 160, ¶ 15, 598 N.W.2d 799; *Madison v. North Dakota Dep't of Transp.,* 503 N.W.2d 243, 246–47 (N.D.1993) (stating that judicial conduct constituting a systemic disregard of the law may warrant reversal even when non-prejudicial).

## IV

[¶ 26] We affirm the trial court's order committing J.M. as a sexually dangerous person.

[¶ 27] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.