775 N.W.2d 73 (2009)
2009 ND 194
In the Matter of O.H.W.
Cass County State's Attorney, Petitioner and Appellee
v.
O.H.W., Respondent and Appellant.
No. 20090136.
Supreme Court of North Dakota.
November 17, 2009.
*74 Mark Rainer Boening (on brief), Assistant State's Attorney, and Quinn Fylling, 3rd year law student, arguing under the Rule on Limited Practice of Law by Law Students, Fargo, ND, for petitioner and appellee.
Richard Edward Edinger, Fargo, ND, for respondent and appellant.
CROTHERS, Justice.
[¶ 1] O.H.W. appeals the district court order finding he remains a sexually dangerous individual and denying his petition for discharge from the North Dakota State Hospital. We affirm, concluding that the district court did not abuse its discretion in admitting the State's expert opinion testimony and that the district court's denial of O.H.W.'s petition for discharge was supported by clear and convincing evidence and was not induced by an erroneous view of the law.

*75 I
[¶ 2] O.H.W. was committed to the North Dakota State Hospital as a sexually dangerous individual in 2005. His diagnosis was pedophilia and antisocial personality disorder. O.H.W.'s commitment was based on his molestation of two 13-year-old boys, his alleged rape of a 42-year-old woman, his sexual assaults of a four-year-old girl and a six-year-old girl and his rape of a developmentally disabled adult female.
[¶ 3] O.H.W. petitioned for release from the State Hospital in 2008. Prior to his discharge hearing, O.H.W. was evaluated by Dr. Lincoln Coombs, a psychologist designated by the State, and by Dr. Robert Riedel, a psychologist chosen by O.H.W. The time frame covered by Dr. Coombs' evaluation included one or two months during which Dr. Coombs was one of O.H.W.'s treating psychologists.
[¶ 4] At the discharge hearing, the only evidence presented was Dr. Coombs' report and testimony. He testified that O.H.W.'s diagnosis of pedophilia should be discontinued, but that O.H.W. continued to be affected by antisocial personality disorder. The continued diagnosis was based on O.H.W.'s failure to follow rules, his deceitfulness about past sex offenses, his impulsivity, his aggression toward peers and staff, his lack of remorse for injuring his victims and his irresponsibility regarding his sex offending treatment. Dr. Coombs also opined that O.H.W.'s rescored risk assessment instrument scores were very high, indicating high risk for reoffending and that antisocial personality disorder "is known to be a pathway towards sexual offending in the future."
[¶ 5] Following the discharge hearing, O.H.W. filed a motion to strike Dr. Coombs' report and testimony and requested judgment as a matter of law. The district court denied O.H.W.'s motion and denied his petition for discharge, finding the report and testimony of Dr. Coombs proved by clear and convincing evidence O.H.W. continued to be a sexually dangerous individual.

II
[¶ 6] After commitment, a sexually dangerous individual has a right to petition for discharge. N.D.C.C. § 25-03.3-18(1). At a discharge hearing, the State must prove by "clear and convincing evidence that the committed individual remains a sexually dangerous individual." N.D.C.C. § 25-03.3-18(4). A sexually dangerous individual is one
"who is shown to have engaged in sexually predatory conduct and who has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others. It is a rebuttable presumption that sexually predatory conduct creates a danger to the physical or mental health or safety of the victim of the conduct. For these purposes, mental retardation is not a sexual disorder, personality disorder, or other mental disorder or dysfunction."
N.D.C.C. § 25-03.3-01(8).
[¶ 7] An individual is likely to engage in further acts of sexually predatory conduct when their "propensity towards sexual violence is of such a degree as to pose a threat to others." Interest of M.B.K., 2002 ND 25, ¶ 18, 639 N.W.2d 473. "This definition prevents a contest over percentage points and the results of other actuarial tools, and allows experts to use the fullness of their education, experience and resources available to them in order to determine if an individual poses a threat to *76 society." Id. In addition to the statutory requirements for categorization as a sexually dangerous individual, this Court requires a "nexus between the disorder and dangerousness, proof of which encompasses evidence showing the individual has serious difficulty in controlling his behavior, which suffices to distinguish a sexually dangerous individual from other dangerous persons." Matter of G.R.H., 2008 ND 222, ¶ 7, 758 N.W.2d 719; see also Kansas v. Crane, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). Determining whether an individual is a sexually dangerous individual allows for consideration of all sexually predatory conduct, "including conduct not resulting in a charge or conviction." Matter of A.M., 2009 ND 104, ¶ 10, 766 N.W.2d 437.

A
[¶ 8] O.H.W. argues the district court erred in denying his petition for discharge because the State did not prove by clear and convincing evidence that he remained a sexually dangerous individual. O.H.W. contends the district court improperly admitted the report and testimony of Dr. Coombs, who O.H.W. asserts violated the American Psychological Association's Ethical Principles of Psychologists and Code of Conduct by acting as both O.H.W.'s evaluating and treating psychologist. The Ethical Principles of Psychologists and Code of Conduct states, in pertinent part,
"[Rule] 3.05 Multiple Relationships
"(a) A multiple relationship occurs when a psychologist is in a professional role with a person and (1) at the same time is in another role with the same person.. . .
"A psychologist refrains from entering into a multiple relationship if the multiple relationship could reasonably be expected to impair the psychologist's objectivity, competence, or effectiveness in performing his or her functions as a psychologist, or otherwise risks exploitation or harm to the person with whom the professional relationship exists.
"Multiple relationships that would not reasonably be expected to cause impairment or risk exploitation or harm are not unethical.
"[Rule] 3.06 Conflict of Interest
"Psychologists refrain from taking on a professional role when personal, scientific, professional, legal, financial, or other interests or relationships could reasonably be expected to (1) impair their objectivity, competence, or effectiveness in performing their functions as psychologists."
American Psychological Association, Ethical Principles of Psychologists and Code of Conduct, American Psychologist (Dec. 2002). The North Dakota Board of Psychologist Examiners has adopted the American Psychological Association's Ethical Principles of Psychologists and Code of Conduct (2002). N.D. Admin. Code § 66-02-01-07.
[¶ 9] The district court did not determine whether Dr. Coombs violated the American Psychological Association's Ethical Principles of Psychologists and Code of Conduct, and we will not decide this issue for the first instance on appeal. Whether Dr. Coombs violated the ethical rules of his profession regarding conflicts of interest has no bearing on the admissibility of his testimony. See Weber v. Weber, 512 N.W.2d 723, 728 (N.D.1994). Rather, infirmity in a psychologist's testimony affects the weight given his opinion, but not its admissibility. Id.
[¶ 10] In Weber, a divorce proceeding was accompanied by a custody dispute, and the husband secured a psychologist to testify in support of his request for sole custody of the parties' minor child. Id. at *77 724-25. Despite never having met the wife, the psychologist reported the parties' minor child was "more likely to experience normal healthy development if placed in the primary custody of his father." Id. at 725 n. 1. In its judgment granting custody of the parties' child to the husband, the district court made findings of fact on the best interests factors of N.D.C.C. § 14-09-06.2 and specifically acknowledged that the psychologist did not meet with or evaluate the wife. Id. at 728.
[¶ 11] On appeal, the wife argued the district court erred in relying on the report and testimony of the husband's psychologist. Weber, 512 N.W.2d at 726. The wife's argument was premised on the North Dakota State Board of Psychologist Examiners' subsequent reprimand of the husband's psychologist for violating the Ethical Principles of Psychologists and Code of Conduct developed by the American Psychological Association. Weber, at 726 n. 2. We held that the flaws and weaknesses in the psychologist's report and testimony were apparent to the district court and that the "frailty" of a doctor's opinion "goes to the weight to be accorded the opinion, and not its admissibility." Id. at 728.
[¶ 12] As in Weber, the ethical violation Dr. Coombs may have committed did not render his report and testimony inadmissible. The district court was aware of O.H.W.'s claim that Dr. Coombs' dual role as a treating and evaluating psychologist was an ethical violation affecting the doctor's objectivity. Dr. Coombs' testimony confirmed that a psychologist who has treated a patient usually should not evaluate that same patient due to concerns of objectivity. In its order denying O.H.W.'s petition for discharge, the district court noted O.H.W.'s argument against admitting Dr. Coombs' report and testimony and stated, "[A]lthough not ideal, the fact of past treatment by Dr. Coombs does not suggest to the Court that Dr. Coombs has been anything but objective in this matter."
[¶ 13] Following Weber, flaws in Dr. Coombs' report and testimony affect the weight accorded his opinion, not its admissibility. The admissibility of Dr. Coombs' report and testimony is controlled by the rules governing the admission of expert opinion testimony. These rules "envision[] generous allowance of the use of expert testimony if the witnesses are shown to have some degree of expertise in the field in which they are to testify." Anderson v. A.P.I. Co., 1997 ND 6, ¶ 9, 559 N.W.2d 204. "The test for admission of expert testimony is whether or not such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue and whether or not the witness is qualified as an expert." State v. Fontaine, 382 N.W.2d 374, 377 (N.D.1986).
[¶ 14] Dr. Coombs' report and testimony were properly admitted as opinion evidence because they were helpful in assisting the court reach a decision. O.H.W. did not testify. Nor did O.H.W. file Dr. Riedel's report or call him to testify, rendering Dr. Coombs' report and testimony the only evidence presented to the court. The district court satisfied the second requirement for the admission of expert testimony by receiving evidence of Dr. Coombs' extensive education and work history.
[¶ 15] The district court has discretion in admitting expert witness testimony, and we will not reverse a district court's decision unless that discretion is abused. State v. Steinbach, 1998 ND 18, ¶ 12, 575 N.W.2d 193. "The district court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination." *78 Nesvig v. Nesvig, 2006 ND 66, ¶ 12, 712 N.W.2d 299.
[¶ 16] The district court did not abuse its discretion by admitting Dr. Coombs' report and testimony because possible ethical violations by testifying psychologists go to the weight of the testimony and not to its admissibility.

B
[¶ 17] O.H.W. claims the evidence was not sufficient to deny his petition for discharge. This Court reviews a district court's denial of a petition for discharge from commitment as a sexually dangerous individual under a modified clearly erroneous standard. Matter of G.R.H., 2008 ND 222, ¶ 7, 758 N.W.2d 719. We will affirm the district court's denial "unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence." Id.
[¶ 18] Here, evidence supports a conclusion that the State proved by clear and convincing evidence that O.H.W. continues to be a sexually dangerous individual. O.H.W.'s risk assessment instrument scores indicated to Dr. Coombs that O.H.W. continues to be at high risk for reoffense. Dr. Coombs stated the results of testing suggest O.H.W. is a psychopath, making it "highly likely that [O.H.W.] will act in ways that harm others with little or no regard for their feelings or welfare, possibly including in a sexually offensive manner." The evidence reveals that O.H.W. continues to act violently and aggressively towards peers and staff at the State Hospital and that he has failed to advance in sex offender treatment.
[¶ 19] We conclude the district court's denial of O.H.W.'s petition for discharge was supported by the evidence and was not clearly erroneous.

III
[¶ 20] O.H.W. argues the district court erred by considering facts not in evidence. O.H.W.'s argument is based on the district court's order referencing the "well-publicized personnel shortages" at the State Hospital. While testimony from Dr. Coombs informed the court of a personnel shortage at the State Hospital, O.H.W. points out that no evidence established the well-known nature of the personnel shortage.
[¶ 21] Under the North Dakota Rules of Evidence, a court may take judicial notice of adjudicative facts. N.D.R.Ev. 201(a), (c). Here, the district court failed to give O.H.W. an opportunity to be heard as to the propriety of taking judicial notice of personnel shortages at the State Hospital, contrary to Rule 201(e). Although the district court erred, failure to give notice was harmless under N.D.R.Civ.P. 61. Kronberger v. Zins, 463 N.W.2d 656, 659 (N.D.1990) ("Harmless error exists when the defect in the proceeding does not affect the substantial rights of the parties."). The district court's judicial notice quantified the justification offered for Dr. Coombs' dual roles as O.H.W.'s treating and evaluating psychologist. The court's quantification was unnecessary, however, because the evidence established that Dr. Coombs assumed dual roles because of a personnel shortage at the State Hospital and that the arrangement was not ideal. That many people may have been aware of personnel shortages at the State Hospital is not evidence necessary to determination of any issue in this case. The district court's judicial notice of that information was harmless error not affecting O.H.W.'s substantial rights.

*79 IV
[¶ 22] The district court did not clearly err in finding O.H.W. remains a sexually dangerous individual. The district court order denying O.H.W.'s petition for discharge from the State Hospital is affirmed.
[¶ 23] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.