2014 ND 194

**In the Interest of G.L.D.**

**Brian D. Grosinger, Assistant State's Attorney, Petitioner and Appellee**

**v.**

**G.L.D., Respondent and Appellant.**

**No. 20140034.**

Supreme Court of North Dakota.

Oct. 28, 2014.

See also 795 N.W.2d 346.

Brian D. Grosinger, Assistant State's Attorney, Mandan, N.D., petitioner and appellee; submitted on brief.

Gregory I. Runge, Bismarck, N.D., for respondent and appellant; submitted on brief.

VANDE WALLE, Chief Justice.

[¶ 1] G.L.D. appealed from district court orders denying his motion to compel discovery and his petition for discharge from treatment as a sexually dangerous individual. We conclude the court abused its discretion in denying G.L.D.'s motion to compel discovery. We reverse the order denying the motion to compel discovery, and we vacate the order denying the petition for discharge and remand for further proceedings on that petition.

I

[¶ 2] In 2007, G.L.D. was committed to the custody of the Department of Human Services for treatment as a sexually dangerous individual and, in 2011, this Court affirmed an order denying his petition for discharge. *In re G.L.D.*, 2011 ND 52, ¶¶ 1, 12, 795 N.W.2d 346. This Court subsequently summarily affirmed another order denying G.L.D.'s petition for discharge from commitment as a sexually dangerous individual. *In re G.L.D.*, 2012 ND 233, ¶ 1, 823 N.W.2d 786.

[¶ 3] In February 2013, G.L.D. petitioned for discharge from commitment as a sexually dangerous individual. In April 2013, Dr. Lynne Sullivan submitted an evaluation to the district court on behalf of the State, concluding G.L.D. remains a sexually dangerous individual. Dr. Sullivan's evaluation referred to a comprehensive review of G.L.D.'s chart at the State Hospital and noted conflicts with other residents and staff at the State Hospital.

[¶ 4] G.L.D. requested production of the following documents from the Morton County State's Attorney's office:

REQUEST NO. 1: [G.L.D.'s] complete medical file, including but not limited to:

a. All North Dakota State Hospital chart notes from March 6, 2013 to present;

b. All medical records pertaining to the back injuries [G.L.D.] received while a patient at the North Dakota State Hospital, including any and all records pertaining clinical/hospital visits outside of the North Dakota State Hospital.

REQUEST NO. 2: Any and all reports and documents pertaining to the alleged assault on [G.L.D.], including, but not limited to, any and all documents pertaining to the final disposition of the alleged assault investigation.

The State objected to G.L.D.'s requests, claiming the documents were not in the possession of the Morton County State's Attorney's office and G.L.D.'s requests were not relevant to whether he continues to be a sexually dangerous individual and were not calculated to lead to the production of admissible evidence. The State also claimed G.L.D.'s request for documents pertaining to an alleged assault of him was extremely broad and did not specify a date and approximate time of the alleged assault.

[¶ 5] G.L.D. thereafter moved the district court to compel production of documents pertaining to his complete medical file, including all chart notes at the State Hospital after March 6, 2013, all medical records about back injuries he received while a patient at the State Hospital, and all medical records for visits to clinics or hospitals outside the State Hospital. G.L.D. also sought all reports and documents about an alleged assault of him at the State Hospital, including documents pertaining to the final disposition of the investigation of the alleged assault. G.L.D. claimed the location of the documents was irrelevant because the state's attorney could request those documents from the State Hospital. He also claimed the documents "regarding the assault ... begs the question as to how many times [he] has been assaulted by anyone" at the State Hospital. He argued the requested documents were relevant to whether he continues to be a sexually dangerous individual because those documents involved his behavior. The State responded that it had complied with G.L.D.'s request for progress notes after March 2013. The State also said the request for "medical records, as opposed to treatment records," including incident reports of an alleged assault, were not relevant to G.L.D.'s progress in treatment or prognosis about whether he remains a sexually dangerous individual.

[¶ 6] The district court denied G.L.D.'s motion to compel discovery, ruling his medical records were not relevant to the issue of whether he remains a sexually dangerous individual, those records were available to him as his own records, and no information established he could not otherwise obtain those records through appropriate requests for his medical information. The court determined G.L.D.'s request was not for relevant information and was not reasonably calculated to lead to admissible information. The court also ruled the records of an incident on March 6, 2013, which resulted in G.L.D. being "written up for his behavior," were not relevant. The court explained a log in Dr. Sullivan's report showed a behavioral incident between G.L.D. and staff, but there was no mention of an assault between patients at the State Hospital. The court also said the State's response to G.L.D.'s

discovery request indicated all the chart notes after March 2013 had been provided to him and it appeared the information about a conflict with another patient was provided to G.L.D. in a chart note. The court explained G.L.D.'s request was vague, had likely been complied with, and the information was not relevant to issues before the court.

[¶ 7] At an evidentiary hearing, Dr. Sullivan testified for the State and Dr. Robert Riedel testified for G.L.D. The court also heard testimony from G.L.D. and from a prospective employer of G.L.D. The district court thereafter denied G.L.D.'s petition for discharge, determining there was clear and convincing evidence he continues to be a sexually dangerous individual. The court explained there was clear and convincing evidence: (1) that G.L.D. had engaged in sexually predatory conduct as defined under N.D.C.C. § 25–03.3–01(9); (2) that he has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction; (3) that his condition makes him likely to engage in further acts of sexually predatory conduct constituting a danger to others; and (4) that there is a nexus between his condition and the danger to others which shows his disorder is linked to a serious difficulty in controlling his behavior. In determining G.L.D. has serious difficulty controlling his behavior, the court cited testimony by Dr. Sullivan that G.L.D. had a number of behavioral write ups during the past review period and stated that Dr. Sullivan opined G.L.D. continues to be unable to control his behavior.

II

[¶ 8] Commitment proceedings for sexually dangerous individuals are civil proceedings. *In re M.D.*, 1999 ND 160, ¶¶ 27–31, 598 N.W.2d 799. This Court reviews the civil commitment of sexually dangerous individuals under a modified clearly erroneous standard of review. *In re Hehn*, 2013 ND 191, ¶ 7, 838 N.W.2d 469. We will affirm a district court's order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence. *Id.* In reviewing a commitment order, "we give great deference to the court's credibility determinations of expert witnesses and the weight to be given their testimony." *In re Wolff*, 2011 ND 76, ¶ 5, 796 N.W.2d 644. We have explained that the district court is "the best credibility evaluator in cases of conflicting testimony and we will not second-guess the court's credibility determinations." *Id.*

[¶ 9] At a discharge hearing, the State must prove by clear and convincing evidence the committed individual remains a sexually dangerous individual. N.D.C.C. § 25–03.3–18(4); *Hehn*, 2013 ND 191, ¶ 8, 838 N.W.2d 469. To prove a committed individual remains a sexually dangerous individual, the State must show three statutory elements:

(1) the individual has engaged in sexually predatory conduct; (2) the individual has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction; and (3) the disorder makes the individual likely to engage in further acts of sexually predatory conduct.

*In re Thill*, 2014 ND 89, ¶ 5, 845 N.W.2d 330. The phrase "likely to engage in further acts of sexually predatory conduct" means the individual's propensity towards sexual violence is of such a degree as to pose a threat to others. *In re E.W.F.*, 2008 ND 130, ¶ 10, 751 N.W.2d 686.

[¶ 10] In addition to the three statutory requirements, the State must also prove a constitutionally required element that the individual has "serious difficulty controlling his behavior." *E.W.F.,* 2008 ND 130, ¶ 10, 751 N.W.2d 686; *see also Kansas v. Crane,* 534 U.S. 407, 412–14, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002). To comport with requirements of substantive due process, this Court has:

> construe[d] the definition of a sexually dangerous individual to mean that proof of a nexus between the requisite disorder and dangerousness encompasses proof that the disorder involves serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from the dangerous but typical recidivist in the ordinary criminal case.

*In re G.R.H.,* 2006 ND 56, ¶ 18, 711 N.W.2d 587. *See also Crane,* at 412–14, 122 S.Ct. 867 We have also held that the conduct evidencing an individual's serious difficulty in controlling behavior need not be sexual in nature. *Wolff,* 2011 ND 76, ¶ 7, 796 N.W.2d 644.

### III

[¶ 11] G.L.D. initially argues the district court erred in denying his motion to compel discovery. He claims his requests for production of documents were reasonable and relevant, and he argues the requested documents are relevant to his ability to control his behavior, including whether he is hostile and aggressive towards staff and other patients at the State Hospital. He asserts he has a right to the requested documents to challenge whether he continues to be a sexually dangerous individual. The State responds it was not in possession of the requested documents and the documents were equally available to G.L.D. The State also argues the documents were not relevant because they were medical records and not treatment records. The State asserts the court did not abuse its discretion in denying G.L.D.'s motion to compel production of the documents.

[¶ 12] We have recognized that commitment proceedings for sexually dangerous individuals are civil proceedings. *M.D.,* 1999 ND 160, ¶¶ 27–31, 598 N.W.2d 799. In civil proceedings, N.D.R.Civ.P. 26(b)(1) authorizes discovery of "any non-privileged matter that is relevant to any party's claim or defense" and further provides "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Under N.D.R.Civ.P. 26(b)(1), the court may limit discovery that is unreasonably cumulative or obtainable from other sources.

[¶ 13] A district court has broad discretion regarding the scope of discovery in a civil proceeding, and its discovery decisions will not be reversed on appeal absent an abuse of discretion. *Western Horizons Living Ctrs. v. Feland,* 2014 ND 175, ¶ 11, 853 N.W.2d 36. A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, if its decision is not the product of a rational mental process leading to a reasoned decision, or if it misapplies or misinterprets the law. *Id.*

[¶ 14] Under N.D.C.C. ch. 25–03.3, a retained or appointed attorney has the right to obtain individually identifiable health information regarding a committed individual in a commitment proceeding. N.D.C.C. § 25–03.3–05(2). Moreover, upon request, any confidential records provided to the state's attorney under N.D.C.C. ch. 25–03.3 must be made available to a committed individual's attorney. N.D.C.C. § 25–03.3–06. Under those provi-

sions, a committed individual has a right to obtain individually identifiable health information and any confidential records provided to the state's attorney.

[¶ 15] Here, the district court denied G.L.D.'s request for production of documents, stating the requests for medical records and for an incident report on March 6, 2013 were not relevant to this matter. The court also said "it would appear this information [about the incident on March 6, 2013] was provided to [G.L.D.] in the chart note" and the request was vague, had likely been complied with, and was not about information relevant to the issue before the court. The discovery issues raised by G.L.D. involve his ability to challenge a relevant issue about his ability to control his behavior. In the context of commitment of a sexually dangerous individual, we have held an individual's serious difficulty in controlling behavior need not be behavior that is sexual in nature. *Wolff*, 2011 ND 76, ¶ 7, 796 N.W.2d 644. This record is not clear about what medical records from outside the State Hospital G.L.D. may or may not have been able to obtain by himself. G.L.D. can obtain his own medical records from providers outside the State Hospital by requesting his records from those providers. However, G.L.D. has a statutory right to obtain any confidential records provided to the state's attorney and individually identifiable health information. N.D.C.C. §§ 25–03.3–05(2) and 25–03.3–06. Moreover, we cannot say G.L.D.'s records at the State Hospital, including any incident reports or write ups, would not have some probative value to the issues involved with whether he continues to be a sexually dangerous individual, including his ability to control his behavior. During G.L.D.'s testimony at the evidentiary hearing, he testified about documents provided by the State which pertain to behavioral write ups in December 2013. He also testified that he was assaulted at the State Hospital. Dr. Sullivan's report identified G.L.D.'s write ups. The issue is not necessarily whether the district court relied on any write ups in rendering its decision. Rather, the issue is whether those write ups could be helpful to either substantiate or negate G.L.D.'s ability to control his behavior.

[¶ 16] This record does not establish what incident reports or records were provided to G.L.D. On the record before this Court, we conclude the district court misapplied the law in not requiring that G.L.D. be provided with confidential records provided to the state's attorney and any other incident reports, chart notes and medical records in the control of the State Hospital. We therefore conclude the court abused its discretion in denying G.L.D.'s motion to compel production of documents. We decline to speculate on the effect of that denial on the ultimate determination of whether G.L.D. remains a sexually dangerous individual. We conclude, however, G.L.D. was entitled to obtain any confidential records provided to the state's attorney and any other incident reports, chart notes and medical records in the control of the State Hospital to challenge his continued commitment as a sexually dangerous individual.

## IV

[¶ 17] We reverse the order denying the motion to compel discovery, and we vacate the order denying the petition for discharge and remand for further proceedings on that petition.

[¶ 18] CAROL RONNING KAPSNER, LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.