2015 ND 92

**In the Matter of Garrett Alan LOY**

**Haley Wamstad, Grand Forks County Assistant State's Attorney, Petitioner and Appellee**

v.

**Garrett Alan Loy, Respondent and Appellant.**

No. 20140111.

Supreme Court of North Dakota.

April 28, 2015.

Haley L. Wamstad, Assistant State's Attorney, Grand Forks, ND, for petitioner and appellee.

Tyler J. Morrow, Grand Forks, ND, for respondent and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Garrett Alan Loy appealed from an order civilly committing him as a sexually dangerous individual. We affirm.

I

[¶ 2] In 2004, Loy was convicted of gross sexual imposition. In 2005, Loy pleaded guilty to a separate charge of gross sexual imposition and his probation from his 2004 conviction was revoked. Loy was sentenced to ten years in custody with five years suspended for the 2004 conviction, and sentenced to ten years in custody with five years suspended for the 2005 conviction, to be served consecutively. Loy was also required to complete the Intensive Sex Addiction Treatment Program. He was evaluated for referral to the North Dakota Department of Corrections and Rehabilitation's sex offender treatment program, and completed the low intensity program in 2006, as well as the intensive offender treatment program in 2012. Prior to his release, the North Dakota Department of Corrections and Rehabilitation did not recommend civil commitment. However, Dr. Lisa Peterson evaluated Loy and was concerned he could become involved in further acts of sexual misconduct following release based upon Loy's inability to control his hypersexuality and his future access to potential victims. Dr. Peterson recommended transitional treatment with gradual reintegration into the general populace.

[¶ 3] The State filed a petition to involuntarily commit Loy as a sexually dangerous individual. Prior to the commitment hearing, Dr. Lynne Sullivan submitted an evaluation to the district court on behalf of the State, determining Loy suffers from hypersexuality and other specified paraphilic disorder, hebephilia. The diagnosis concluded Loy was at a high risk of engaging in further acts of sexually predatory conduct.

[¶ 4] Prior to the commitment hearing, Loy was found indigent and was granted a court-appointed attorney. Loy moved for appointment of an independent mental health evaluator as an indigent, which was also granted. Loy later dismissed his court-appointed counsel and hired private counsel. The district court required Loy provide a financial affidavit based on his ability to hire private counsel, and found Loy had $2,800 in assets and ordered him to pay $2,700 toward the expense of his independent evaluation. Loy moved to substitute the court-appointed evaluator with his own independent evaluator, which was denied.

[¶ 5] Dr. Gregory Volk was appointed by the district court to provide an independent evaluation of Loy. Dr. Volk diagnosed Loy with other specified paraphilic disorder, hebephilia, unspecified depressive disorder, and other specified personality dis-

order (histrionic, self-defeating, antisocial, and borderline features). Dr. Volk concluded Loy had a moderate to high level of risk to reoffend, but if appropriate levels of supervision could be maintained in the community of his residence and he was actively engaged in a solution-focused, strength based program that address the underlying causes of his sexually inappropriate behaviors, it was likely Loy could make an adequate adjustment in the community.

[¶ 6] Dr. Sullivan and Dr. Volk testified during the commitment hearing. At the time of Dr. Sullivan's testimony, her license with the North Dakota State Board of Psychologist Examiners was under probation. Loy moved to prohibit Dr. Sullivan's testimony arguing she was not a qualified expert witness. The district court denied the motion. Dr. Volk testified that Loy's failure to partially pay Dr. Volk for Loy's independent evaluation indicated a raised risk level in disobeying a court order. Loy moved to exclude Dr. Volk's testimony as an expert witness due to alleged bias. The motion was denied. Loy moved to allow Rodney Ireland, a person currently committed as a sexually dangerous individual, testify about the treatment received at the North Dakota State Hospital. The motion was also denied by the district court.

[¶ 7] The district court determined there was clear and convincing evidence Loy remains a sexually dangerous individual and ordered that he be committed to the custody of the North Dakota Department of Human Services. The district court specifically stated Loy's failure to pay Dr. Volk as a sign of increased risk was not a pivotal factor in determining whether Loy should be released, and amended its prior order deleting his requirement to pay for the independent evaluation.

[¶ 8] On appeal, Loy argues the district court erred in allowing the testimony of Dr. Sullivan and Dr. Volk as expert witnesses, erred in denying Loy the right to choose an independent evaluator at the State's expense, erred in denying Loy's witness from testifying about treatment conditions, and erred in finding clear and convincing evidence exists that he remains a sexually dangerous individual.

II

[¶ 9] Commitment proceedings for sexually dangerous individuals are civil proceedings. *In re M.D.*, 1999 ND 160, ¶ 27, 598 N.W.2d 799. This Court reviews the civil commitment of sexually dangerous individuals under a modified clearly erroneous standard of review, and will affirm a district court's order denying a petition for discharge unless it is induced by an erroneous view of the law or we are firmly convinced it is not supported by clear and convincing evidence. *In re Hehn*, 2013 ND 191, ¶ 7, 838 N.W.2d 469. In reviewing a commitment order, "we give great deference to the court's credibility determinations of expert witnesses and the weight to be given their testimony." *In re Wolff*, 2011 ND 76, ¶ 5, 796 N.W.2d 644.

[¶ 10] The State must prove by clear and convincing evidence the committed individual remains a sexually dangerous individual. N.D.C.C. § 25–03.3–18(4); *In re G.L.D.*, 2014 ND 194, ¶ 9, 855 N.W.2d 99. To prove a person remains a sexually dangerous individual, the State must prove:

(1) the individual has engaged in sexually predatory conduct; (2) the individual has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction; and (3) the disorder makes the individual likely to en-

gage in further acts of sexually predatory conduct.

*Id.* The State must also prove a constitutionally required element that the individual has "serious difficulty controlling his behavior." *Id.* at ¶ 10.

## III

■ [¶ 11] Loy argues the district court erred in allowing Dr. Lynne Sullivan to testify as a qualified expert witness because her licensure was under probation. A "qualified expert" in an action civilly committing a sexually dangerous individual means "an individual who has an expertise in sexual offender evaluations and who is a psychiatrist or psychologist trained in a clinical program and licensed pursuant to this state's law or a psychologist approved for exemption by the North Dakota board of psychologist examiners." N.D.C.C. § 25–03.3–01(4). An expert witness is also defined as "a witness who is qualified as an expert by knowledge, skill, experience, training, or education" who "may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." N.D.R.Ev. 702.

[¶ 12] It is not disputed that Dr. Sullivan was licensed by the North Dakota State Board of Psychologist Examiners. A licensure subject to probation does not nullify the license, and Dr. Sullivan meets both the statutory and evidentiary standard required to testify. Her probationary status is an issue of weight and credibility as to her testimony, and not an issue of admissibility. The district court did not abuse its discretion in admitting Dr. Sullivan as a qualified expert witness.

## IV

■ [¶ 13] Loy argues the district court erred by denying him the right to

have an independent examination be performed by a qualified expert at no expense. After a finding of probable cause to believe the respondent is a sexually dangerous individual, North Dakota requires an evaluation be conducted by an expert to determine "whether the respondent has a congenital or acquired condition that is manifested by a sexual disorder, personality disorder, or other mental disorder or dysfunction that makes the respondent likely to engage in further acts of sexually predatory conduct." N.D.C.C. § 25–03.3–11. "[A] respondent may retain an expert to perform an evaluation or testify on the respondent's behalf," and in the case of an indigent respondent, "the court shall appoint a qualified expert to perform an examination or participate in the commitment proceeding on the respondent's behalf." N.D.C.C. § 25–03.3–12. The statute does not give an indigent respondent the right to choose the independent evaluator. *In re B.V.*, 2006 ND 22, ¶ 18, 708 N.W.2d 877.

[¶ 14] Loy was originally granted indigent status, and Dr. Volk was appointed by the district court to perform an independent examination on Loy's behalf. Prior to submission of Dr. Volk's evaluation with the district court, Loy's indigent status was amended due to his retention of private counsel and submission of a financial affidavit indicating the ability to partially pay $2,700 toward the evaluation's costs. Loy moved to substitute Dr. Volk with another independent evaluator. The district court denied the motion and received Dr. Volk's evaluation that same day. Dr. Volk's evaluation did not indicate any reference to Loy's inability to pay for the evaluation as a risk factor. At the hearing, Dr. Volk did testify that Loy's inability to pay for the evaluation indicated a raised risk assessment due to his failure to follow a court order.

[¶ 15] Unlike court-appointed counsel for an indigent respondent, North Dakota makes no provision for recoupment of costs associated with an independent examination. *See* N.D.C.C. § 25–03.3–09(3), (4). The district court's order requiring partial payment by Loy for his independent evaluation was based on an erroneous view of the law. However, the district court's final order did not require Loy provide payment for the independent evaluation. The record does not indicate Loy provided any payment for Dr. Volk's evaluation, and Loy's indigent status remained in effect. Because Loy remained indigent throughout the proceedings, Loy did not retain a right to choose an independent evaluator paid by the State, and the district court's prior order requiring payment was harmless and did not affect a substantial right.

## V

▮ [¶ 16] Loy argues the district court erred in allowing Dr. Volk to testify as a qualified expert witness due to his alleged bias against Loy. The district court's order referenced Dr. Volk's testimony as follows:

> Dr. Volk indicated that the Respondent's failure to comply with a court order to partially pay for the independent evaluation he had requested indicated to him a raised risk level, as it indicated a continuing lack of responsibility, and that that irresponsibility was new post-report information. The court determines, however, that this factor is not pivotal in determining whether or not the Respondent should be released at this time for continued monitoring and further sex offender treatment, or whether he needs additional in-patient sex offender treatment prior to release.

▮ [¶ 17] We have previously held that issues regarding an alleged violation of professional ethics or rules of a profession, including conflicts of interests, have no bearing on the admissibility of an expert witnesses's testimony, but rather affect the weight given that opinion. *In re O.H.W.*, 2009 ND 194, ¶ 9, 775 N.W.2d 73. The rules governing admission of expert testimony envision generous allowance of its use if the witness is shown to have some degree of expertise in the field in which they are to testify, and if the testimony assists the trier of fact to understand the evidence or determine a fact in issue and is qualified as an expert, it will be accepted. *Id.* at ¶ 13. As stated above, the district court's assessment of witness credibility is granted deference, and the district court's discretion in admitting expert testimony will not be reversed unless the district court abuses its discretion by acting in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination. *Id.* at ¶¶ 15–16.

[¶ 18] The district court found Dr. Volk's testimony at the hearing was apparently shaped in part by an outstanding debt allegedly owed by Loy to Dr. Volk. However, this concerns the weight of Dr. Volk's testimony, and the district court order clearly indicates the alleged conflict was not a pivotal factor in the final decision. The district court did not abuse its discretion by allowing Dr. Volk to testify.

## VI

▮ [¶ 19] Loy argues the district court erred by denying Mr. Rodney Ireland from testifying at Loy's hearing. Rule 401, N.D.R.Ev., provides: "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." "Irrelevant evidence is not admis-

sible." Rule 402, N.D.R.Ev. A respondent found to be a sexually dangerous individual is placed in the care of the North Dakota Executive Director of the Department of Human Services, and placement of the respondent in an appropriate facility is left to the discretion of the executive director. N.D.C.C. §§ 25–03.3–01(2), 25–03.3–13. This can include an out-of-state facility. *See* N.D.C.C. § 25–03.3–17(3). The four elements at issue in a commitment hearing do not include whether the State has provided adequate treatment at the North Dakota State Hospital. Inadequate treatment in one state facility would not be grounds to release a respondent. A district court is required to commit the respondent to the care of the executive director, and the executive director is charged with placing the respondent in an appropriate facility. N.D.C.C. § 25–03.3–13. Testimony as to the quality of treatment at a specific facility is premature. Treatment had not yet been received by Loy, and the issue before the district court is only whether to commit Loy into the custody of the North Dakota Department of Human Services. The district court did not abuse its discretion by excluding Mr. Ireland's testimony.

### VII

[¶ 20] Loy argues the district court erred in determining the State had satisfied its burden of proving by clear and convincing evidence that he remains a sexually dangerous individual. This argument is based on Dr. Sullivan's lack of an in-person interview of Loy, her failure to diagnose Loy under a specific psychological exam using specific metrics, her alleged erroneous diagnosis of Loy, and Dr. Volk's testimony and evaluation supporting Loy's transition back into society.

[¶ 21] Here, evidence supports a conclusion that the State proved by clear and convincing evidence that Loy continues to be a sexually dangerous individual. Dr. Sullivan's lack of a personal interview does not bar her diagnosis, and goes to the weight of the evidence and not its admissibility. *See In re J.M.*, 2013 ND 11, ¶¶ 11–13, 826 N.W.2d 315. Under the factors, Loy was found to have previously engaged in sexually predatory conduct. Both expert witnesses diagnosed Loy with having a congenital or acquired condition that is manifested by a sexual, personality, or other mental disorder or dysfunction making him likely to engage in further acts of sexually predatory conduct. Both experts diagnosed Loy with hebephilia as well as other specified personality disorders. The manner in which Dr. Sullivan diagnosed Loy would go to the credibility of the evidence, not its admissibility, and both expert witnesses agreed in the results of the examinations using methodology accepted in the profession. Dr. Sullivan's diagnosis, reviewing the entire record, supports Loy's diagnosis of hypersexuality due to his actions, history, and difficulty controlling his behavior, and indicated Loy is at serious risk for reoffending. Dr. Volk's initial report rated Loy as moderate to high risk of reoffense, and that he had difficulty controlling his sexual impulses. Based on the record, the district court's determination is not clearly erroneous.

### VIII

[¶ 22] We affirm the district court's civil commitment order.

[¶ 23] DALE V. SANDSTROM and LISA FAIR McEVERS, JJ., concur.

KAPSNER, Justice, dissenting.

[¶ 24] I respectfully dissent from the majority opinion.

[¶ 25] To deprive a person of his liberty for an indefinite period of time in the civil commitment of a sexually dangerous

individual, the State must show, by clear and convincing evidence, that the individual to be committed has a disorder that makes the individual likely to engage in further acts of sexually predatory conduct and, because of the disorder, is likely to engage in those acts. *See* N.D.C.C. § 25–03.3–01(8). In addition, substantive due process rights require that the individual facing civil commitment must also be shown to have serious difficulty controlling his behavior. *Matter of E.W.F.*, 2008 ND 130, ¶ 10, 751 N.W.2d 686.

[¶ 26] I noted in my dissent in *Interest of Maedche* that although this Court has held the commitment laws of our state are civil in nature, our sexual predator commitment laws have to be regarded as punitive, and we must provide the usual protections that are afforded to a criminal defendant. *Maedche*, 2010 ND 171, ¶¶ 29–30, 788 N.W.2d 331. Although the commitment of a sexually dangerous individual is a civil proceeding, the deprivation of liberty resulting from commitment is in many ways worse than the deprivation of liberty following a conviction in a criminal proceeding because the period of commitment is indefinite. *Interest of Hoff*, 2013 ND 68, ¶ 10, 830 N.W.2d 608. "[T]he fervor of a rightfully outraged public" to prevent sexually predatory crimes "cannot be allowed to overcome the necessary safeguards to individual liberty the law has established." *Interest of J.M.*, 2006 ND 96, ¶ 18, 713 N.W.2d 518.

[¶ 27] Due process requires the confinement's duration and conditions bear some reasonable relation to the purpose for which the individual has been committed. *Matter of G.R.H.*, 2006 ND 56, ¶ 24, 711 N.W.2d 587. "Procedural due process requires fundamental fairness, which, at a minimum, necessitates notice and a meaningful opportunity for a hearing appropriate to the nature of the case." *Id.* "A

person committed as a sexually dangerous individual is entitled to certain post-commitment procedures in N.D.C.C. §§ 25–03.3–17 and 25–03.3–18, including the least restrictive treatment and an annual examination and report to the committing court." *Id.* at ¶ 25. At the time of the annual examination, the committed individual has the right to have an expert examination, and, if the individual is indigent, the court shall appoint a qualified expert to examine the committed individual and report to the court. N.D.C.C. § 25–03.3–17(2).

[¶ 28] In Dr. Volk's initial evaluation of Loy, Dr. Volk concluded Loy had a moderate to high level of risk to reoffend, but if appropriate levels of supervision could be maintained, it was likely Loy could make an adequate adjustment in the community. Dr. Volk's initial evaluation did not indicate any reference to Loy's inability to pay for the evaluation as a raised risk factor. However, Dr. Volk testified at the hearing that Loy's inability to pay for the independent evaluation indicated a raised risk assessment due to his failure to follow a court order:

Q. [Atty. Wamstad]: Any new information you obtained since you completed that report?

A. [Dr. Volk]: The new information I would have is just—since it's been sort of a course of time here since I completed the evaluation last spring, the one thing that I would add is that there are factors that would plainly contribute to an overall increase in the risk rating. And I believe—my understanding is that behavior wise, things have—there have been just some minor incidents. However, and I sort of don't necessarily like to bring this up, necessarily, because it is probably a difficult subject in some ways, but there is the matter of financial obligations. And so Mr. Loy has an

outstanding bill to our office for $2,700. And it's not about the finances of that, but part of the risk assessment process, looking at financial responsibility as well as (indiscernible) responsibility and he has chosen not to pay that at this point in time, which, again, is less of the issue and in terms of the overall picture of the fact that it does show that there's a lack of responsibility to follow through with obligations. The other piece, I think, is maybe even more concerning for me is that was a court-ordered obligation. So I think that that increases the level of risk because it shows that he is not in compliance with a directive through the Court, which increases risk because it would suggest that he may not be in compliance with any kind of recommendations or anything that would be occurring through the court system if he were released into the community.

Loy moved to exclude Dr. Volk's testimony as an expert witness due to alleged bias, and the district court denied his motion. In its order, the district court specifically noted that Dr. Volk's testimony regarding Loy's failure to partially pay for the evaluation was "not pivotal" in its determination of whether Loy should be released.

[¶ 29] I agree with the majority's finding in ¶ 15 that "[t]he district court's order requiring partial payment by Loy for his independent evaluation was based on an erroneous view of the law." However, I disagree with the majority that the district court's prior order requiring payment was harmless error under the circumstances. Dr. Volk testified Loy's risk level was raised because of an alleged failure to partially pay for the evaluation; this was due, in part, to the district court's erroneous prior order requiring Loy to partially pay for Dr. Volk's independent evaluation. In ¶ 18, the majority acknowledges, "[t]he district court found Dr. Volk's testimony at the hearing was apparently shaped in part

by an outstanding debt allegedly owed by Loy to Dr. Volk." However, the majority ultimately found that the district court did not abuse its discretion by allowing Dr. Volk to testify because the court's order clearly indicated the alleged conflict was not "pivotal" to the court's final decision. The process of civilly committing sexually dangerous individuals involves a serious deprivation of liberty, and that process should not be tainted. Here, the district court found Dr. Volk's testimony was apparently shaped, in part, by an outstanding debt allegedly owed by Loy to Dr. Volk. Loy, an indigent person who qualified for a court-appointed expert witness, was assessed as having an increased risk of reoffending by virtue of his "lack of responsibility to follow through with obligations." This was an obligation that was improper to impose on him in the first place—compounded by the fact that his inability to pay was treated by that expert as related to his sexual dangerousness. While the court stated the alleged conflict was "not pivotal" to its decision, I conclude the cumulative effect of the admittance of Dr. Volk's biased testimony, along with the court's erroneous view of the law regarding Loy's partial payment for the evaluation, so tainted the process as to require reversal and a remand for a new hearing.

[¶ 30] As an appellate court, we disregard errors which do not affect substantial rights (harmless errors), while we must consider errors objected to at trial that were prejudicial (reversible errors) and errors "so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time" (obvious errors). *See* Commentary, N.D.R.Crim.P. 52. "The mere quantity of alleged errors is not in itself the measure for reversal." *State v. Ebach*, 1999 ND 5, ¶ 16, 589 N.W.2d 566. While the errors in this case, standing alone, arguably may

have been harmless, the errors are so intertwined and interrelated that I would conclude the cumulative effect of the errors requires reversal and a remand for a new hearing. *See State v. Parisien,* 2005 ND 152, ¶ 22, 703 N.W.2d 306.

[¶ 31]   CAROL RONNING KAPSNER

CROTHERS, Justice, dissenting.

[¶ 32]   I respectfully dissent for many of the reasons articulated by Justice Kapsner. While I do not agree with her that sexual dangerous individual cases are the equivalent of criminal proceedings, I do agree tenets of due process are violated when a respondent is improperly required to pay for expert witness services and the witness modifies his testimony adverse to the respondent after the improper bill is not timely paid. I too would remand for a new hearing.

[¶ 33]   DANIEL J. CROTHERS