# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2019 ND 258

In the Interest of J.B.

Kathleen K. Murray, State's Attorney,                    Petitioner and Appellee

     v.

J.B.,                                                    Respondent and Appellant

## No. 20190111

Appeal from the District Court of Wells County, Southeast Judicial District, the Honorable James D. Hovey, Judge.

AFFIRMED.

Opinion of the Court by Jensen, Justice.

Tyler Morrow, Grand Forks, ND, for respondent and appellant.

Kathleen Murray, State's Attorney, Fessenden, ND, for petitioner and appellee.

**Jensen, Justice.**

[¶1]   J.B. appeals from an order denying his petition for discharge from commitment as a sexually dangerous individual.  J.B. argues the district court erred in determining he remains a sexually dangerous individual because the State failed to prove by clear and convincing evidence that he has serious difficulty controlling his behavior.  We conclude clear and convincing evidence supports the court's finding J.B. has serious difficulty controlling his behavior, and we affirm.

I

[¶2]   In 2005, the district court found J.B. was a sexually dangerous individual and committed him to the care, custody, and control of the executive director of the North Dakota Department of Human Services.  In July 2018, J.B. petitioned for discharge from commitment and requested a hearing.  Dr. Deirdre M. D'Orazio completed an annual evaluation of J.B., and a report from the evaluation was filed.  Dr. D'Orazio stated in her report that it was her professional opinion that J.B. continues to meet the criteria as a sexually dangerous individual.  Dr. D'Orazio also completed an addendum to her report before the discharge hearing to provide a current opinion about whether J.B. continued to meet the definition of a sexually dangerous individual because more than five months had passed since the prior evaluation was completed.

[¶3]   J.B. moved for an independent examiner to be appointed, and the district court appointed Dr. Stacey Benson.  Dr. Benson's report and evaluation was not filed and she did not testify at the hearing.

[¶4]   After a January 2019 discharge hearing, the district court denied J.B.'s petition.  The court found there was clear and convincing evidence J.B. remains a sexually dangerous individual and ordered that he continue to be committed.

## II

[¶5]   We review civil commitments of sexually dangerous individuals under a modified clearly erroneous standard.  *In re R.A.S.*, 2019 ND 169, ¶ 5, 930 N.W.2d 162.  "[W]e will affirm the district court's decision unless it is induced by an erroneous view of the law, or we are firmly convinced the decision is not supported by clear and convincing evidence."  *Id.*  The State has the burden to prove by clear and convincing evidence that the petitioner remains a sexually dangerous individual.  *Id.*

[¶6]   The State must prove three statutory elements to show the petitioner remains a sexually dangerous individual:

> [1] [The individual] engaged in sexually predatory conduct and [2] . . . has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction [3] that makes that individual likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

*R.A.S.*, 2019 ND 169, ¶ 5, 930 N.W.2d 162; *see also* N.D.C.C. § 25-03.3-01(8). In addition to the three statutory elements, to satisfy substantive due process, the State must also prove:

> [T]he committed individual has serious difficulty controlling his behavior. . . . We construe the definition of a sexually dangerous individual to mean that proof of a nexus between the requisite disorder and dangerousness encompasses proof that the disorder involves serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from the dangerous but typical recidivist in the ordinary criminal case.

*In re Johnson*, 2016 ND 29, ¶ 3, 876 N.W.2d 25 (quoting *In re Wolff*, 2011 ND 76, ¶ 7, 796 N.W.2d 644); *see also Kansas v. Crane*, 534 U.S. 407, 413 (2002).

"The district court may consider sexual and non-sexual conduct demonstrating an individual's serious difficulty controlling behavior, but the presence of a mental disorder or condition alone does not satisfy the requirement of clear

and convincing evidence the individual is likely to engage in further sexually predatory conduct." *R.A.S.*, 2019 ND 169, ¶ 7, 930 N.W.2d 162. "[T]he evidence must clearly show . . . a serious difficulty in controlling sexually predatory behavior." *In re J.M.*, 2019 ND 125, ¶ 16, 927 N.W.2d 422 (quoting *In re J.M.*, 2006 ND 96, ¶ 10, 713 N.W.2d 518). The court must make specific findings upon which its conclusion is based. *R.A.S.*, at ¶ 7.

[¶7] J.B. does not argue the district court erred in finding the State met its burden of proving the three statutory elements to prove he remains a sexually dangerous individual, but he claims the court's factual basis was not sufficient to support its finding that he has serious difficulty controlling his behavior. He contends the only evidence that supports the court's finding was that he had one write-up for failing to get up for breakfast and empty his breakfast tray. He asserts that evidence was not sufficient and the court's findings do not support its conclusion that the State provided clear and convincing evidence that he has serious difficulty controlling his behavior.

[¶8] The district court concluded clear and convincing evidence established J.B. continues to have serious difficulty controlling his behavior. The court found:

> The addendum to Dr. D'Orazio's report indicates that [J.B.] continues to have difficulty conforming to the rules at the Level 3 Community Transition Center, where he [has] required redirection for swearing and going against staff orders not to speak with a specific female staff person that he finds attractive. He continues to have difficulty listening to feedback, taking the perspective of others, interrupting others, and engaging in obtrusive behaviors.

The court further found:

> [J.B.'s] deviant behavior started at an early age and is atypical. He has been institutionalized for the majority of his life. [J.B.] continues to relate to people with anger, resentment, and conflict. Between the date of Dr. D'Orazio's original report and the hearing, [J.B.] continued to have difficulty consistently getting along with his peers and required redirection. He also received one behavioral write-up during that time frame for irresponsible treatment,

3

interfering behavior, and failure to follow rules and directions. Considering [J.B.'s] insufficient progress in completing the sex offender treatment program and continued behavioral issues, the Court finds that without the benefit of the structured environment in which he is currently placed that he would have serious difficulty controlling his sexual behavior. He requires slow incremented return to the community, which he is receiving.

Based on its findings, the court concluded J.B. has serious difficulty controlling his behavior and remains a sexually dangerous individual.

[¶9] The only evidence presented to the district court was through Dr. D'Orazio's reports and her testimony. J.B. did not present any conflicting evidence.

[¶10] Dr. D'Orazio stated in her evaluation that J.B. has a history of irritability and aggressiveness; he has been physically violent, sexually violent, and verbally aggressive towards others; he has a pervasive disregard for the rights of others; and he demonstrates an absence of remorse for his actions. J.B. has resided in secure placements since he was twelve years old due to sexual offending behavior. Evidence established J.B. committed multiple sexual offenses while he was a juvenile and he was convicted of aggravated assault and theft of property related to an attack on a female State Hospital staff member in 2006 while civilly committed.

[¶11] Dr. D'Orazio testified J.B. is in the most advanced level of the treatment program and has achieved the community transition center house, which allows the highest levels of freedom within the hospital treatment program, but she believes he continues to need treatment and is not ready for a less restrictive alternative. She testified she believes J.B. would have serious difficulty controlling his sexual behavior if he was discharged at this time without slow incremental steps to return to community living; and she explained his long-term institutionalizations, being removed from society at a young age, and persistent ingrained sexual deviancy makes him likely to fail if he is released without conditions.

4

[¶12] Evidence established J.B. was diagnosed with other specified paraphilic disorder, coercion and sexual sadism ("OSPD"); antisocial personality disorder; and attention deficit hyperactivity disorder; and the symptoms of the disorders create a mental condition resulting in J.B. having serious difficulty controlling his behavior. Dr. D'Orazio stated in her evaluation that J.B.'s three mental disorders affect his capacity to control his sexual behavior. Based on J.B.'s mental disorders, treatment progress, and other factors, Dr. D'Orazio said J.B. is likely to engage in further acts of sexually predatory conduct and would have serious difficulty controlling his sexual behavior if he was discharged at this time. Dr. D'Orazio testified J.B.'s antisocial personality disorder impairs his ability to control his behavior and contributes to his likelihood to reoffend sexually. Dr. D'Orazio stated in the addendum to her report that J.B.'s OSPD "impairs his volitional functioning in that he is unable to restrain these impulses despite having been witness to the negative effects to self and others of acting on such urges." She stated there is a nexus between his mental disorders and his likelihood to commit sexual offenses because the disorders inhibit his ability to control his behavior.

[¶13] Evidence exists in the record that between August 2017 and May 2018 J.B. stated he was emotionally attached to a female staff member, he would seek her out but he would like to think that he was not breaking boundaries with the staff member, he was going to a female staff member's office several times a day and was asked to not go to her office, and he compared his attempted rape of a past staff member with a current staff member. The addendum to Dr. D'Orazio's report, which covered a five-month period before the discharge hearing, stated J.B. was redirected for going against staff orders not to speak with a specific female staff person he finds attractive. Dr. D'Orazio testified J.B. disclosed he had a sexual interest in a staff person, he was ordered to not talk to that person, and he broke the rules by talking to the person. She testified:

> He has a history of breaking boundaries with staff. He sexually targeted a staff person, seriously sexually assaulted her, and had a desire to kill her, so he has to really be monitored in this area. He really has to be closely monitored. And for him to go against the treatment directive, "Do not talk with this staff person," and to

do that anyway out of his own sexual interests, that is evidence that this dynamic risk factor remains present for him.

She testified the hospital is not permitting J.B. to advance in his treatment at least partly because of his issues with females and boundary violations.

[¶14] Evidence established J.B. talks over and interrupts others, he does not listen to others, he struggles with attention seeking behaviors, sometimes he is not redirectable, and he tells others to shut up and cuts others off. The addendum to Dr. D'Orazio's report stated:

> [J.B.] continues to have difficulty consistently getting along with peers (there were several instances of arguments with peers and a redirection for swearing). . . . He is repeatedly noted to have difficulty listening to feedback, listening to complete questions, taking the perspective of others, interrupting others, and engaging in obtrusive behaviors. On a few occasions he was informed his behaviors were below that acceptable for his treatment level. In treatment he discussed excessive spending habits and difficulties interacting with females.

The addendum also noted J.B. received one write-up for "Irresponsible treatment interfering behavior and failure to follow rules and directions. He did not get [up] for breakfast or empty his breakfast tray."

[¶15] Dr. D'Orazio testified J.B. continues to have difficulty managing himself, including cutting off people during conversation. She stated the manifestations of J.B.'s serious difficulty controlling his behavior are not as severe in the hospital setting as they would be in an unconditional release because the hospital is doing what it is supposed to do. She testified, "He has not completely achieved the treatment that he needs, such that if he were released to the community, even provisionally in a community commitment, that he would reoffend sexually. And that would obviously represent substantial and serious difficulty controlling his behavior." She testified the absence of negative behavioral write-ups does not equate to an absence of any evidence of serious difficulty controlling his behavior.

6

[¶16] Dr. D'Orazio's testimony and reports support the district court's finding that J.B. has serious difficulty controlling his behavior. Under our modified clearly erroneous standard of review, we conclude the evidence supports the court's findings. We conclude the court's findings the State proved by clear and convincing evidence that J.B. has serious difficulty controlling his behavior and that he remains a sexually dangerous individual are not clearly erroneous.

III

[¶17] We affirm the district court's order denying J.B.'s petition for discharge and continuing his commitment as a sexually dangerous individual.

[¶18] Jon J. Jensen
      Lisa Fair McEvers
      Gerald W. VandeWalle, C.J.

      We concur in the result.
      Jerod E. Tufte
      Daniel J. Crothers

7