# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 304

In the Interest of G.L.D.

----------

Allen Koppy, State's Attorney,                    Petitioner and Appellee

v.

G.L.D.,                    Respondent and Appellant

No. 20190179

Appeal from the District Court of Morton County, South Central Judicial District, the Honorable Daniel J. Borgen, Judge.

REMANDED.

Opinion of the Court by VandeWalle, Chief Justice.

Allen M. Koppy, Morton County State's Attorney, Mandan, ND, petitioner and appellee.

Tyler J. Morrow, Grand Forks, ND, for respondent and appellant.

## Interest of G.L.D.
## No. 20190179

**VandeWalle, Chief Justice.**

[¶1]   G.L.D. appealed from a district court order denying his petition for discharge from civil commitment as a sexually dangerous individual. We conclude the district court did not make sufficient findings of fact, and we remand for further findings.

I

[¶2]   G.L.D. was civilly committed as a sexually dangerous individual in 2007. This Court has affirmed G.L.D.'s commitment. *In re G.L.D.*, 2016 ND 26, 876 N.W.2d 485 (per curiam); *In re G.L.D.*, 2016 ND 25, 876 N.W.2d 485 (per curiam); *In re G.L.D.*, 2014 ND 194, 855 N.W.2d 99; *In re G.L.D.*, 2012 ND 233, 823 N.W.2d 786 (per curiam); *In re G.L.D.*, 2011 ND 52, 795 N.W.2d 346. G.L.D. petitioned the district court for discharge in April 2016, and a discharge hearing was held in June 2019. At the hearing, Dr. Richard Travis testified for the State. Dr. Travis testified that G.L.D. remains a sexually dangerous individual subject to continued civil commitment. G.L.D. did not call any experts in support of his petition for discharge. At the conclusion of the hearing, the district court orally issued the following findings of fact and conclusions of law:

> Thank you. And for the record, the Court does weigh this that the State is the one moving forward, has the burden and that burden beyond a clear and convincing evidence and we go into this Prong 1 as stipulated to.
>
> Prong 2, there is a diagnosis. We had – the diagnosis was testified to. The State had called one expert. No other experts were called. There was some possible impeachment by the respondent attempts, but I find the weight and the credibility of the expert that was called very credible and I'm giving it great weight particularly when we go on to Prongs 3 and 4. And when – I intermingle these a little bit because he testified that it is very likely that [G.L.D.] would reoffend if released into the community. I wrote that down specifically. He said that right before he said,

1

"[G.L.D.] would have serious difficulties controlling his behavior if he was released into the community."

And I'm giving great weight and credibility to the expert in that regard. And when we look at *In the Interest of J.M.*, which the Court has in front of it, I know that, Mr. Morrow, you had indicated in that 2016 case that just not participating in treatment can't be used. But the Court in your – in this latest case reflects that *J.M.* not only had not acted out sexually and not had any sexual nature rule violations, he has either completed his sexual offender treatment and made substantial – or made substantial progress since his last evaluation.

The Court goes on to say that the standard is an individual may only be committed when the individual has serious difficulties controlling his or her sexual predatory behavior making that individual a danger to others.

In the case at hand, Dr. Travis said that [G.L.D.] would have serious difficulties controlling his behavior in the community and that he would be very likely to reoffend. So the Court's making that finding that with the diagnosis and – paraphilia diagnosis with the other two diagnoses and the substance abuse issue that's been in remission for a long time because of the controlled environment, I'm not really weighing that. There's been at least, it looks like, 20 years of sobriety here whether it be forced or not, I don't – I'm not weighing that part of it.

What I'm really looking at is the nexus between the diagnosis and the fact that the doctor feels that based on all the circumstances, and that includes behaviors as recent as February where [G.L.D.] refused to take part in providing any more information that may have helped the doctor to make any kind of different diagnosis, his being uncooperative with the – with the doctor, it's hard for the Court to find any other way than the commitment would have to continue and the State's met its burden.

[¶3]   After it issued its findings, the district court requested the State draft a proposed order that G.L.D. remain civilly committed. The proposed order submitted by the State incorporated by reference the court's oral findings and

2

did not contain any additional or more specific findings of fact. The court signed the State's proposed order subjecting G.L.D. to continued civil commitment.

## II

[¶4]   On appeal, G.L.D. argues the district court made insufficient findings of fact to support its conclusion that G.L.D. is likely to engage in further acts of sexually predatory conduct and has difficulty controlling his behavior.

> This Court reviews civil commitments of sexually dangerous individuals under a modified clearly erroneous standard of review. *Interest of Nelson*, 2017 ND 152, ¶ 3, 896 N.W.2d 923. We affirm a district court's order unless it is "induced by an erroneous view of the law, or we are firmly convinced the order is not supported by clear and convincing evidence." *Id.* When reviewing the district court's order, this Court gives "great deference to the court's credibility determinations of expert witnesses and the weight to be given their testimony." *In re Johnson*, 2016 ND 29, ¶ 3, 876 N.W.2d 25. To be committed as a sexually dangerous individual a person must meet the three statutory elements:

> > (1) the individual has engaged in sexually predatory conduct,
> > (2) the individual has a congenital or acquired condition that is manifested by a sexual disorder, a personality disorder, or other mental disorder or dysfunction, and
> > (3) the individual's condition makes them likely to engage in further acts of sexually predatory conduct which constitute a danger to the physical or mental health or safety of others.

> N.D.C.C. § 25-03.3-01(8).

> In addition to the three statutory elements, the State must satisfy substantive due process and prove the committed individual has serious difficulty controlling his behavior. *In re Whitetail,* 2013 ND 143, ¶ 5, 835 N.W.2d 827. In *Kansas v. Crane*, the Supreme Court explained that "we did not give to the phrase 'lack of control' a particularly narrow or technical meaning. And we recognize that in cases where lack of control is at issue, 'inability to control behavior' will not be demonstrable with mathematical precision." 534 U.S. 407, 413, 122 S. Ct. 867, 151 L. Ed. 2d 856 (2002). Although not mathematical, the "inability to

control behavior . . . must be sufficient to distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." *Id.* Thus, a "connection between the disorder and the individual's inability to control" his actions must be found. *Nelson*, 2017 ND 152, ¶ 4, 896 N.W.2d 923.

North Dakota incorporates the *Crane* requirement through the definition of sexually dangerous individual, which requires "proof of a nexus between the requisite disorder and dangerousness [to] encompass[ ] proof that the disorder involves serious difficulty in controlling behavior and suffices to distinguish a dangerous sexual offender whose disorder subjects him to civil commitment from the dangerous but typical recidivist in the ordinary criminal case." *In re J.M.*, 2006 ND 96, ¶ 10, 713 N.W.2d 518. The three statutory elements and the *Crane* element must be proven by the State with clear and convincing evidence. *Nelson*, 2017 ND 152, ¶ 5, 896 N.W.2d 923.

*In re T.A.G.*, 2019 ND 115, ¶¶ 3-5, 926 N.W.2d 702.

[¶5] A district court must make the specific factual findings upon which it bases legal conclusions. *Nelson*, 2017 ND 152, ¶ 5, 896 N.W.2d 923. The district court errs as a matter of law when its findings are insufficient or do not support the legal conclusions. *Id.*

Under N.D.R.Civ.P. 52(a)(1), the district court "must find the facts specially and state its conclusions of law separately."

Conclusory, general findings do not comply with N.D.R.Civ.P. 52(a), and a finding of fact that merely states a party has failed in [or has sustained] its burden of proof is inadequate under the rule. The court must specifically state the facts upon which its ultimate conclusion is based on. The purpose of the rule is to provide the appellate court with an understanding of the factual issues and the basis of the district court's decision. Because this Court defers to a district court's choice between two permissible views of the evidence and the district court decides

4

issues of credibility, detailed findings are particularly important when there is conflicting or disputed evidence. This Court cannot review a district court's decision when the court does not provide any indication of the evidentiary and theoretical basis for its decision because we are left to speculate what evidence was considered and whether the law was properly applied. The court errs as a matter of law when it does not make the required findings.

*In re Johnson*, 2015 ND 71, ¶ 8, 861 N.W.2d 484 (quoting *In re R.A.S.*, 2008 ND 185, ¶ 8, 756 N.W.2d 771).

[¶6]   Here, the findings for element three and the *Crane* requirement are insufficient for this Court to understand the basis of the district court's order. The district court did not state which risk factors it found sufficient to support the finding that G.L.D. is likely to reoffend. Nor are we provided with sufficient findings or reasoning on the *Crane* element to understand the nexus between G.L.D.'s disorder and any behavior demonstrating lack of behavioral control, such as his unwillingness to participate in Dr. Travis's evaluation. As a result, it is unclear how G.L.D. is different from the dangerous but typical recidivist.

III

[¶7]   In light of our heightened standard of review requiring clear and convincing evidence, the need for the district court to make specific findings on which it bases its decision, and the constitutional concerns surrounding civil commitment of sexually dangerous individuals, it is the best practice for district courts to issue written findings on each of the four required elements. This Court is usually better able to discern the evidence relied on by the district court when it issues written, rather than oral, findings. Should the district court request that a party prepare written findings or an order, the court must ensure that the proposed findings on each element are sufficient. If the court determines the proposed findings submitted by a party are insufficient, the court must issue sufficient written findings to support its decision.

## IV

[¶8]  We conclude the district court's findings are inadequate to permit appellate review. We retain jurisdiction under N.D.R.App.P. 35(a)(3), and remand the district court's commitment order with instructions that, within thirty days from the filing of this opinion, the district court make specific findings of fact on whether G.L.D. is likely to engage in further acts of sexually predatory conduct and whether G.L.D. has a present serious difficulty controlling his behavior.

[¶9]  Gerald W. VandeWalle, C.J.
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte
Jon J. Jensen